## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| **DOUGLAS KEIL, Individually and as Trustee of the Douglas P. Keil Revocable Trust dated April 13, 2015,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | Case No.: _____ |
| **SETH CORPORATION,** ) <u>**SERVE**</u>:  CT Corporation Systems, RA ) 4701 Cox Road ) Glen Allen, Virginia 23060 ) ) | |
| **KIRK KEIL, Individually, as Former Trustee of the Milton Perel 1970 Trust, and as Director and Officer of the Seth Corporation,** ) ) ) <u>**SERVE**</u>:  808 Ophir Peak Road ) Incline Village, Nevada 89451 ) ) | |
| **and** ) ) | |
| **RETTA LEIGH KEIL, Individually and as Director and Officer of the Seth Corporation** ) ) <u>**SERVE**</u>:  5801 Maple Green Circle ) Richmond, Virginia 23226 ) ) | |
| **Defendants.** ) | |

## <u>COMPLAINT</u>

Plaintiff Douglas Keil, individually and as Trustee of the Douglas P. Keil Revocable Trust dated April 13, 2015, by and through his counsel, and files his Complaint ("**Complaint**"), and states as follows:

## PARTIES AND JURISDICTION[1]

1.      Plaintiff Douglas Keil ("**Doug**") is a resident of Utah and a residuary beneficiary of the Milton Perel 1970 Trust ("**Milton Perel Trust**"). Doug is also Trustee of the Douglas P. Keil Revocable Trust dated April 13, 2015 ("**Doug's Trust**"). Doug's Trust holds 12 shares of the Seth Corporation.

2.      The Seth Corporation is a Virginia stock corporation. The prime asset of the Milton Perel Trust is shares in the Seth Corporation. The Seth Corporation owns 64.79% of Fairfield Development Company, LLC ("**Fairfield Development**").

3.      Defendant Kirk Keil ("**Kirk**") is a resident of Nevada and is the former Trustee and a residuary beneficiary of the Milton Perel Trust. Kirk is also President and one of two Directors of the Seth Corporation, and the Managing Member of Fairfield Development. Kirk has multiple conflicting and irreconcilable duties in these roles.

4.      Defendant Retta Leigh Keil ("**Retta Leigh**") is a resident of Virginia and the lifetime beneficiary of the Milton Perel Trust. Retta is also a Vice President and one of two Directors of the Seth Corporation. Retta Leigh is the mother of Doug and Kirk.

5.      The situs of the Milton Perel Trust is Virginia, as substantially all of the assets held by the Trust are interests in Virginia-based businesses.

6.      The registered office for the Seth Corporation is in Henrico County, Virginia.

7.      Fairfield Development owns real property located in Chesterfield County, Virginia.

8.      The records and information requested are located, at least in part, in Virginia.

---

[1]      On  April 26, 2019, Doug filed a substantially similar Complaint in the Henrico County Circuit Court.  *See Douglas Keil v. Seth Corporation, et al.,* CL19002589-00 ("Henrico Litigation").  Doug non-suited the case and re-filed the action in this Court as the state-Court delays made this matter too difficult to effectively litigate.

9.      Prior to initiating this Complaint, Doug made demand on the Board of Directors for the Seth Corporation for the matters alleged herein and waited 90 days. The Board of Directors refused to act. Doug, therefore, has standing to bring this action derivatively on behalf of the Seth Corporation.

10.     The conduct giving rise to this lawsuit occurred in Virginia.

11.     There is complete diversity of citizenship among the parties.

12.     The instant lawsuit does not address probate property for which the probate exception to diversity jurisdiction might apply.

13.     The amount in controversy exceeds $75,000.00.

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTS:
## PREVIOUS LITIGATION

15.     This case could well follow the admonition set forth by the Court in *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 609 F. App'x 578 (11th Cir. 2015), wherein the Court stated:

> Mixing family and family-owned business can be complicated. When the mix produces litigation, complications can multiply. When the litigation involves misconduct allegedly committed by family members serving simultaneously as officers of the family business and as trustees of the family trust holding large amounts of the company's stock, the complications abound.

*Id*. at 579.

16.     The facts giving rise to this Complaint begin almost immediately following the settlement of the previously filed action involving these parties.

17.     On May 6, 2016, Doug filed a lawsuit in the United States District Court for the Eastern District of Virginia, Alexandria Division.

3

18.     The matter was transferred to the Richmond Division and assigned to the Honorable Robert E. Payne. *See Douglas Keil v. Kirk Keil, et al.*, Civil Action No. 3:16-cv-00665-REP ("**2016 Case**").

19.     The 2016 Case involved Kirk and Retta Leigh colluding to replace assets held in two sub-Trusts under Irrevocable Trusts that were for Doug's benefit ("**2003 Doug Sub-Trust**" and "**2011 Doug Sub-Trust**") and replacing those assets with far less valuable assets. The 2003 Doug Sub-Trust and the 2011 Doug Sub-Trust held substantial shares in the Seth Corporation, and the 2011 Doug Sub-Trust held a 17.605% interest in Fairfield Development. Kirk served as the Trustee of both the 2003 Doug Sub-Trust and the 2011 Doug Sub-Trust. In addition, the case involved Kirk inappropriately giving Retta Leigh one of the Milton Perel Trust's shares when there was no permissible basis for doing so. Through the course of discovery in the 2016 Case, Doug learned that Kirk was working in lock-step with Retta Leigh's counsel to orchestrate the transactions at issue in order to purposefully damage Doug.

20.     In point of fact, Kirk was acting as Retta Leigh's agent in the transactions under a durable power of attorney and failed to act independently as Trustee of either the Milton Perel Trust, the 2003 Doug Sub-Trust, or the 2011 Doug Sub-Trust in orchestrating transactions that directly and indirectly harmed Doug.

21.     Kirk had a clear conflict of interest in his roles and was effectively negotiating solely for Retta's advantage. In doing so, Kirk abdicated any sense of fiduciary duty to Doug.

22.     Upon information and belief, Kirk was doing so knowing that substantially all of Retta Leigh's assets would be left to him and/or his family to the exclusion of Doug.

23.     The facts related to the 2016 Case are set forth in detail in the Amended Complaint. The factual allegations in the Amended Complaint, but not the causes of action which have been

resolved, are incorporated herein to provide context to the current dispute. A copy of the Amended Complaint without exhibits, is attached as Exhibit 1.

24.     The 2016 Case resolved on March 28, 2017 with a Settlement Agreement and Release, which required Retta Leigh and/or Kirk to pay $1,800,000.00 into the 2011 Doug Sub-Trust and 2003 Doug Sub-Trust, and to pay an additional $140,000.00 into 529 Plans for the benefit of Doug's children (hereafter "**Settlement Payment**"). A true and accurate copy of the Settlement Agreement is attached as Exhibit 2.

25.     The Settlement Agreement, which was executed over three years ago, required an independent trustee to be appointed for the Milton Perel Trust. *See* Settlement Agreement, ¶ 1(F). Despite this, Kirk failed to resign as Trustee of the Milton Perel Trust until January 22, 2021. Kirk's failure to promptly resign as Trustee of the Milton Perel Trust allowed him to commit the major breaches of trust described herein.

26.     What followed the Settlement Agreement was a deliberate attempt by Kirk and Retta Leigh to directly harm Doug, and recompense Retta Leigh and Kirk for the Settlement Payment at the direct expense of Doug and the long-term interests of the Milton Perel Trust. It was also clearly an attempt to punish Doug.

27.     Kirk's and Retta Leigh's combined conduct was done through inter-related corporate and trustee decisions, and decisions that harmed the long-term interests of the Seth Corporation (and, by extension, Doug's Revocable Trust, which holds 12 shares of the Seth Corporation), as well as Doug's future expectancy in the Milton Perel Trust.

### HISTORICAL BACKGROUND AND CURRENT OWNERSHIP

28.     Milton Perel formed the Seth Corporation in 1952.

29.     Milton Perel was the father of Retta Leigh and grandfather of Doug and Kirk.

30.    The Seth Corporation is a real estate and investment holding company which has historically been exceptionally profitable based upon the wise stewardship of Milton Perel. It holds significant amounts of real property and investments.

31.    In addition, the Seth Corporation owns 64.79% of Fairfield Development, which in turn owns an apartment complex and vacant land. The Seth Corporation, through Kirk and Retta Leigh as its sole officers and directors, controls and dominates all decisions of Fairfield Development.

32.    In 1970, Milton Perel executed the Milton Perel Trust. The Trust was irrevocable. A copy is attached as Exhibit 3.

33.    The Milton Perel Trust was funded with shares of the Seth Corporation, and the Milton Perel Trust currently holds 127 of the outstanding 509 shares of the Seth Corporation. Those 127 shares of the Seth Corporation until January 2021 were voted by Kirk as the Trustee of the Milton Perel Trust, even though he was required to resign from that office following the Settlement Agreement over three years ago.

34.    Retta Leigh is the lifetime beneficiary of the Milton Perel Trust who is entitled to the net income of that Milton Perel Trust. After her death, Doug and Kirk take the remainder in equal shares.

35.    The Milton Perel Trust pays Retta Leigh a substantial net income each year. Retta Leigh bears the income taxation on those distributions as if it were direct income to her.

36.    The Milton Perel Trust permits the trustee to expend principal for the "support, maintenance, education or emergency need of [Retta Leigh]." *See* Exhibit 3, at § 3.

37.    However, the trustee has a duty to inquire about Retta Leigh's needs before invading the principal that Milton Perel intended to pass to Doug and Kirk equally. In other words,

the trustee must find that Retta Leigh has some economic need prior to invading the trust principal that is designated for Doug and Kirk.

38.    Upon information and belief,[2] the current shareholders of the Seth Corporation are as follows:

| | |
|---|---|
| Kirk Keil, Trustee of the Milton Perel Irrevocable Trust Agreement dated 12/30/1970 | 127 shares |
| Kirk Keil | 12 shares |
| Doug Keil, Trustee for Douglas Keil Revocable Trust Agreement dated April 13, 2015 | 12 shares |
| Kirk Keil, Trustee of 2003 Kirk sub-Trust for the Retta Leigh Keil Irrevocable Trust | 63 shares |
| Kirk Keil, Trustee of 2011 Kirk sub-Trust for the Retta Leigh Keil Irrevocable Trust | 116 shares |
| Retta Keil, Trustee of the Retta Keil Revocable Trust | 179 shares |
| Total | 509 shares |

39.    Retta Leigh acquired the 179 shares from the 2003 Doug Sub-Trust and 2011 Doug Sub-Trust when Kirk, acting as Trustee and as agent of Retta Leigh, sold the shares to Retta Leigh at a substantially undervalued price. This resulted in the 2016 Case.

40.    At present, Doug as Trustee of his own Trust, owns 12 shares (2.35% of the outstanding shares) of the outstanding 509 shares of Seth Corporation. Upon Retta Leigh's death he will receive one-half of the property in the Milton Perel Trust which, if distributed today, would be an additional 63.5 shares for a total of 75.5 shares (14.83% of the outstanding shares).

41.    Upon Retta Leigh's death, Kirk would then have 85.17% of the outstanding shares of the Seth Corporation.

---

[2]    Because Doug has been systematically denied information from Kirk who has served as Trustee of the Milton Perel Trust until recently and an officer/director of the Seth Corporation, Doug must plead based upon historical information.

42.     Soon after the Settlement Agreement was executed, Doug requested information from Kirk related to the Seth Corporation and the Milton Perel Trust.

43.     Kirk refused to provide the information.

44.     Over the next eighteen months, Doug, individually and through counsel, requested information from Kirk pertaining to the Seth Corporation and the Milton Perel Trust.

45.     As an example, Doug's counsel sent a letter to Kirk's counsel related to the Milton Perel Trust on February 5, 2018 requesting information regarding unusually large dividends from the Seth Corporation that were nearly five (5) times the historical amount of dividends. A copy of the February 5, 2018 correspondence is attached as Exhibit 4.

46.     Kirk's corporate counsel wrote back on February 20, 2018 effectively providing no information and falsely stating that Doug was not entitled to "tax returns or the other documents requested in your letter" under the terms of the Settlement Agreement. A copy of the February 20, 2018 correspondence is attached as Exhibit 5.

47.     Doug's counsel refuted the February 20, 2018 letter, by letter dated March 13, 2018. A copy of the March 13, 2018 correspondence is attached as Exhibit 6.

48.     On March 23, 2018, a third letter was then sent to Kirk's additional counsel, again requesting information related to the unusually large dividend paid from the Seth Corporation. A copy of the March 23, 2018 correspondence is attached as Exhibit 7.

49.     The information requested was never provided and, instead, Doug was told to obtain the information from Kirk in his role as Officer and Director of the Seth Corporation, knowing that Kirk had already refused to provide that information. A copy of the applicable correspondence dated March 29, 2018 and April 11, 2018 is attached collectively as Exhibit 8.

50.     Doug then sent another demand to Kirk in his role as Trustee of the Milton Perel Trust, as officer and director of the Seth Corporation, and as Managing Member of Fairfield Development.  A copy of the January 22, 2019 letter is attached as Exhibit 9.

51.     On January 28, 2019, Kirk's attorney representing only the Seth Corporation responded and advised that Kirk would provide records only if Doug entered into a "confidentiality agreement." A copy of the January 28, 2019 letter is attached as Exhibit 10.

52.     No response came from Fairfield Development or Kirk as Trustee of the Milton Perel Trust.

53.     The non-disclosure agreement is extremely onerous and would mandate Doug file any documents marked confidential under seal.

54.     When asked to explain why the need for a confidentiality agreement, given that the Seth Corporation holds no trade secrets and its financial information would not give a competitive advantage to its competitors, the only response was effectively "because we want it." *See* Email Chain attached as Exhibit 11.

55.     Despite being provided only incomplete information to date, Doug was able to learn that in 2017, following the Settlement Agreement, Kirk and Retta Leigh, as Directors of the Seth Corporation, declared unusually high dividends from the Seth Corporation. Specifically,

    a.     on July 26, 2017, a dividend was paid from the Seth Corporation to the Milton Perel Trust in the amount of $212,082.52 and then immediately to Retta Leigh in the amount of $212,082;

    b.     on November 8, 2017, a dividend was paid from the Seth Corporation to the Milton Perel Trust and then immediately to Retta Leigh in the amount of $561,394.89;

9

     c.       on June 8, 2018, a dividend was paid from the Seth Corporation to the Milton Perel Trust in the amount of $162,180.00 and then immediately to Retta Leigh in the amount of $142,182.30; and

     d.       on December 14, 2018, a dividend was paid from the Seth Corporation to the Milton Perel Trust in the amount of $162,180.00 and then immediately to Retta Leigh in the amount of $146,000.00.

56.     Doug does not have specifics on the dividends paid from Seth Corporation to the Milton Perel Trust since January 1, 2019, but believes them to be in excess of $1,500,000.00 – far greater than the historical dividends from the Seth Corporation.

57.     The annual dividend payments since 2017 are nearly double what they had been historically.  This is clearly because now 97.65% of all such dividends inure to the benefit of Retta Leigh and Kirk.

58.     The total dividends passed through to Retta Leigh from the Milton Perel Trust since the Settlement Agreement is in excess of $2,500,000.00.

59.     Retta Leigh received the unusually large dividends as the net income beneficiary of the Milton Perel Trust.

60.     Retta Leigh has exhibited no need that would justify these increased dividends and payments from the Milton Perel Trust.

61.     Since the Settlement Agreement the total dividends paid to all shareholders – 97.65% of which inured to the benefit of Retta Leigh and Kirk – have exceeded $4.6 million. The source of these funds was not the normal business operations of the Seth Corporation or Fairfield Development.

62.     In September 2018, Doug learned for the first time that Kirk and Retta Leigh had substantially increased the debt owed by Fairfield Development, which was incurred for the primary purpose of paying out large dividends inuring the benefit of Retta Leigh and Kirk.

63.     Kirk and Retta Leigh caused the debt owed by Fairfield Development to increase from $1,788,000.00 prior to the Settlement Agreement to over $4,481,000.00 in 2017.

64.     The decision to saddle Fairfield Development and, in turn, burden the Seth Corporation with debt, appears to have been made as a means to funnel funds to Kirk and Retta Leigh to cover the cost of the Settlement Payment.

65.     The debt Kirk and Retta Leigh caused Fairfield Development to assume had no legitimate business purpose and has diminished the long-term worth of Fairfield Development, the Seth Corporation, and, by extension, the Milton Perel Trust.

66.      Retta Leigh, who is currently 76, will not bear the full impact of the long-term loan as it will largely be paid after her death.  Accordingly, the long-term loan used to fund large and unprecedented current distributions to her will ultimately be borne in large part by Doug's remainder share of the Milton Perel Trust.

67.     Upon information and belief, Kirk was motivated by spite, as well as the knowledge that he would ultimately gain a disproportionate share of both the Seth Corporation and Fairfield Development Company, LLC when Retta Leigh died, and by the desire to do what his mother asked him to do, remaining in her good graces and so in line to be primary beneficiary of her estate.

68.     Retta Leigh was fully aware of the fiduciary duties Kirk owed to Doug as the Trustee of the Milton Perel Trust and fully participated in Kirk's actions, acting in tandem with Kirk to inappropriately pull money from the Seth Corporation.

69.     Kirk ignored clear conflicts of interest, and with full acquiescence and ratification by Retta Leigh, acted to the detriment of Doug.  Pursuant to the January 22, 2019 letter, previously, attached as Exhibit 9, Doug made demand upon Kirk and Retta Leigh as officers and directors in the Seth Corporation to institute an action pursuant to Virginia Code § 13.1-672.1.  They have refused.

70.     Doug needs access to the requested information in order to protect his interests as a shareholder in the Seth Corporation through the Doug Trust and as a residuary beneficiary of the Milton Perel Trust.

## COUNT I – BREACH OF FIDUCIARY DUTY
**(Derivative action against Kirk and Retta Leigh on behalf of the Seth Corporation)**

71.     The allegations contained in paragraphs 1 through 70 are incorporated herein as if stated verbatim.

72.     Although Kirk and Retta Leigh have provided only limited information, the information that they have provided makes it clear that they committed serious breaches of fiduciary duty.

73.     The distributions were made in bad faith and not remotely in the best interests of the Seth Corporation and did not comply with the requirements of Virginia Code § 13.1-690(A). The distributions were made without "any rational business purpose."  *F.D.I.C. ex rel. Co-op. Bank v. Rippy*, 799 F.3d 301, 312 (4th Cir. 2015); *see also*, Goolsby & Haas on Virginia Corporations, 6th ed. § 9.7, p. 197, copy attached as Exhibit 12.  Rational directors and officers of a corporation would not take on significant corporate debt for the purpose of being able to distribute out massive amounts of cash – 97.65% of which ultimately went to benefit themselves.

74.     There is simply no economic justification for excessive and unprecedented dividends fueled by taking on massive debt, and Kirk and Retta Leigh's conduct was done in bad

faith.  Kirk and Retta Leigh's actions were not grounded on any reasonable business objective and were the result of improper motives that amount to waste of corporate and trust assets.

75.    Kirk and Retta Leigh were asked in Interrogatories in the Henrico Litigation if they relied upon the "advice or opinions of legal counsel, public, accountant, other professional, or other person" regarding the loan Kirk and Retta Leigh objected and refused to provide an answer based upon the Interrogatory being "premature."  Accordingly, it appears that Kirk and Retta Leigh did not rely upon "advice or opinions of legal counsel, public, accountant, other professional, or other person" at the time they acted to take out the loan in question.

76.    By orchestrating these transactions, Kirk and Retta Leigh have damaged the long-term interests of the Seth Corporation and Fairfield Development and, by extension, Doug who currently owns 12 shares and stands to inherit more shares through Retta Leigh's estate.

77.    Doug has been materially damaged by the actions of Kirk and Retta Leigh.  Their conduct was willful misconduct removing any limitations on liability.  See Virginia Code § 13.1-692.1(B).

78.    The Seth Corporation has been materially damaged by the actions of Kirk and Retta Leigh, not only from the massive and unwarranted distributions, but also saddling Fairfield Development with massive debt.

79.    Kirk and Retta Leigh's actions were motivated by spite, actual malice, and wanton disregard for the best interests of the Seth Corporation.

80.    Doug has been shareholder of Seth Corporation at the time of the transactions complained of herein.

81.    Doug made written demand on Kirk and Retta Leigh as the sole Directors of the Seth Corporation to take action to redress the breaches of fiduciary duty.  See Exhibit 9.

82.    Kirk and Retta Leigh refused to take any action to redress the breaches of fiduciary duty.

83.    Doug waited more than 90 days from the date of the demand on Kirk and Retta Leigh to take action prior to filing this lawsuit.

84.    Doug can fairly and adequately represent the interests of the Seth Corporation in enforcing the rights of the Seth Corporation.

WHEREFORE, Douglas Keil, derivatively on behalf the Seth Corporation, requests that this Honorable Court enter judgment against Kirk and Retta Leigh in the amount of no less than $10,000,000.00 payable to the Seth Corporation, for an award of punitive damages in the amount of $350,000.00 payable to the Seth Corporation, for an award of attorney's fees, expenses, and costs pursuant to Virginia Code § 13.1-672.5, and for such additional and further relief as this Court deems just and proper under the circumstances.

## COUNT II – BREACH OF TRUST AND FIDUCIARY DUTY
### (Doug individually and on behalf of the Milton Perel Trust against Kirk as Trustee of the Milton Perel Trust)

85.    The allegations contained in paragraphs 1 through 84 are incorporated herein as if stated verbatim.

86.    The Milton Perel Trust owns a major portion of the Seth Corporation.

87.    Kirk as the former Trustee of the Milton Perel Trust had a duty of loyalty, impartiality, duty to prudently invest, and care to the beneficiaries of the Milton Perel Trust.

88.    Specifically, Virginia Code § 64.2-764(g) states in part that:

> In voting shares of stock or in exercising powers of control over similar interests in other forms of enterprise, the trustee shall act in the best interests of the beneficiaries.

89.     Virginia Code § 64.2-764 was adopted from Section 802 of the Uniform Trust Code developed by the Uniform Law Commission. The commentary to Section 802 states that "the trustee may not use the corporate form to escape the fiduciary duties of trust law." A copy of the commentary for Section 802 with commentary is attached as Exhibit 13.

90.     The commentary for Section 802 goes on to say:

> Thus, for example, a trustee whose duty of impartiality would require the trustee to make current distributions for the support of current beneficiaries may not evade that duty by holding assets in corporate form and pleading the discretion of corporate directors to determine dividend policy. Rather, the trustee must vote for corporate directors who will follow a dividend policy consistent with the trustee's trust-law duty of impartiality.

91.     Kirk as the former Trustee of the Milton Perel Trust had a duty of impartiality pursuant to Virginia Code § 64.2-765 and Virginia Code § 64.2-785.

92.     Virginia Code § 64.2-765 states that "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."

93.     Virginia Code § 64.2-765 was adopted from Section 803 of the Uniform Trust Code. A copy of Section 803 with commentary is attached as Exhibit 14.

94.     The commentary to Section 803 states that these interests "include those of the current beneficiaries versus those of beneficiaries holding interests in the remainder."

95.     The commentary to Section 803 further states:

> In fulfilling the duty to act impartially, the trustee should be particularly sensitive to allocation of receipts and disbursements between income and principal and should consider, in an appropriate case, a reallocation of income to the principal account and vice versa, if allowable under local law.

96.     Kirk as the former Trustee of the Milton Perel Trust had a duty under the Virginia Uniform Principal and Income Act to act with loyalty and impartiality toward Doug.

97.     Virginia Code § 64.2-1002 of the Uniform Principal and Income Act relates to a trustee's power to adjust application of principal and income when the trustee cannot administer the trust impartially.

98.     Virginia Code § 64.2-1002 was derived from Section 104 Uniform Law Commission's Uniform Principal and Income Act. A copy of Section 104 with commentary is attached as Exhibit 15.

99.     The comments to Section 401 of the Uniform Principal and Income Act, codified in Virginia Code § 64.2-1009, indicate that the trustee should treat large distributions from an entity as principal rather than income, particularly when the distributions were derived from something other than normal business operations. A copy of Section 401 with commentary is attached as Exhibit 16.

100.    Kirk as Trustee of the Milton Perel Trust owed a duty to care and prudently administer the Milton Perel Trust pursuant to Virginia Code § 64.2-766.

101.    Kirk as Trustee of the Milton Perel Trust breached his duties of loyalty, care and impartiality when voting the shares of the Seth Corporation inconsistent with the interests of the Milton Perel Trust and Doug as beneficiary. Kirk's breaches include taking on excessive and unnecessary debt, using that debt to fund massive distributions from the Seth Corporation, and then passing approximately 97.65% of the dividends to himself and Retta Leigh.

102.    Kirk as the former Trustee of the Milton Perel Trust owed duties to Doug that supersede his duties to the Seth Corporation.

103.    Kirk as the former Trustee of the Milton Perel Trust violated the Uniform Principal and Income Act by treating the massive distributions from the Seth Corporation as income and distributing all such income to Retta Leigh.

104.    Kirk had the duty to prudently invest pursuant to Virginia Code § 64.2-763 and § 64.2-780 *et seq*.

105.    Because Kirk's duties as Trustee superseded his corporate duties Kirk's corporate decisions were subject to the standard of care set forth in Virginia Code § 64.2-782. *See Stegemeier v.*

*Magness*, 728 A.2d 557 (1999) (rejecting trustee's attempt to apply more lenient corporate standard to the law of trust) ("We, therefore, decline to extend the less strict corporate fiduciary principles to the law of trusts." Id. at 565; *Jones v. Ellis*, 551 So.2d 396 (Ala. 1989) (when trustee who holds dual roles of trustee and director, the "trustee should have acted with complete and undivided loyalty to his trust, excluding all personal or selfish interests as well as those of third parties." Id. at 402).

106.    Kirk violated the standard of care in Virginia Code § 64.2-782 by recklessly and needlessly saddling Fairfield Development with debt and then distributing it out through the Seth Corporation.

107.    Kirk's conduct as Trustee has caused a significant diminution in the value of the Milton Perel Trust as he has caused a significant asset of the Milton Perel Trust to take on a substantial debt for the primary purpose of distributing out cash to Retta Leigh.

108.    Kirk did so knowing that he would eventually reap the reward through Retta Leigh's estate planning.

109.    Doug and the Milton Perel Trust have been damaged by Kirk's conduct.

110.    Kirk's actions were motivated by spite, actual malice and wanton disregard for the best interests of the Milton Perel Trust and Doug as a beneficiary of the trust.

111.    Virginia Code § 64.2-792 addresses remedies for breach of trust.  Subsection A states "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Subsection B states specifically that the Court can:

1.    Compel the trustee to perform the trustee's duties;
2.    Enjoin the trustee from committing a breach of trust;
3.    Compel the trustee to redress a breach of trust **by paying money**, restoring property, or other means;
    …
10.    Order any other appropriate relief.

Va. Code § 64.2-792 (emphasis added).

112.    Virginia Code § 64.2-792(B)(9) permits this Court to impose a constructive trust on trust property.

113.    This Court should impose a constructive trust over the proceeds of the distribution from the Milton Perel Trust to Retta Leigh.

114.    Doug has standing to compel a redress of the breaches of fiduciary duty related to the Milton Perel Trust. *See Brundage v. Bank of Am.*, 996 So. 2d 877, 882–83 (Fla. Dist. Ct. App. 2008) ("However, once the interest of the contingent beneficiary vests upon the death of the settlor, the beneficiary may sue for breach of a duty that the trustee owed to the settlor/beneficiary which was breached during the lifetime of the settlor and subsequently affects the interest of the vested beneficiary."); *Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill. App. 3d 318, 323–24, 686 N.E.2d 42, 45–46 (1997) (contingent beneficiary entitled to sue trustee for selling trust assets to her son for less appraised value); *Scanlan v. Eisenberg*, 669 F.3d 838, 842–45 (7th Cir. 2012); *Johnson v. Bank of Am., N.A.*, No. X04HHDCV156066060S, 2016 WL 6128087, at *5 (Conn. Super. Ct. Sept. 19, 2016) ("Clearly then, The Restatement fully embraces the concept that a person who holds a contingent beneficial interest in a trust, and whose rights are "adversely affected," has standing to sue the trustee for damages."); See The Restatement (Third) of Trusts, § 94, Comment b. (explaining that a "suit to enforce a private trust ordinarily ... may be maintained by any beneficiary whose rights are or may be adversely affected by the matter(s) at issue. The beneficiaries of a trust include any person who holds a beneficial, present or future, vested or contingent...."), copy attached as Exhibit 17.

WHEREFORE, Douglas Keil, individually and on behalf of the Milton Perel Trust, requests that this Honorable Court enter judgment against Kirk in the amount of no less than

$10,000,000.00 in favor of the Milton Perel Trust and for an award of punitive damages in the amount of $350,000.00, impose a constructive trust over the wrongful distributions to Retta Leigh Keil, grant him an award of attorney's fees, expenses, and costs to be paid by Kirk Keil or the Milton Perel Trust pursuant to Virginia Code § 64.2-795, and for such additional and further relief as this Court deems just and proper under the circumstances.

**COUNT III – AIDING AND ABETTING**
**BREACH OF TRUST AND FIDUCIARY DUTY**
**OR ALTNERATIVELY JOINT TORTFEASOR LIABILITY**
**(Doug individually and on behalf of the Milton Perel Trust against Retta Leigh)**

115.    The allegations contained in paragraphs 1 through 114 are incorporated herein as if stated verbatim.

116.    Retta Leigh was aware that Kirk owed fiduciary duties to Doug as Trustee of the Milton Perel Trust.

117.    Retta Leigh directed and participated in the breaches of fiduciary duty committed by Kirk as Trustee of the Milton Perel Trust. Indeed, her vote was required to implement the scheme of taking out unnecessary debt to funnel massive distributions to herself.

118.    Under *Patteson v. Horsley*, 70 Va. (29 Gratt.) 263 (1877), Retta Leigh had "notice, actual or constructive, of the facts which constituted such breach of trust, and the same having been committed at his instance and for [her] benefit." *Id.* at 276.

119.    Aiding and abetting a tort has long been recognized in Virginia. As stated in *Ratcliffe v. Walker*, 117 Va. 569, 85 S.E. 575, 579 (1915) (quoting *Daingerfield v. Thompson*, 33 Gratt. (74 Va.) 136, 151 (1880):

> Any person present at the doing of a wrong, encouraging or inciting the same by words, gestures, looks or signs, or who by any means countenances or approves the same, is in law deemed to be an aider and abettor, and liable as principal.

120.    Retta Leigh participated and benefited from Kirk's breaches of fiduciary duty.

121.     Doug and the Milton Perel Trust were damaged by Retta Leigh's actions.

122.     Retta Leigh is liable to Doug and the Milton Perel Trust as a joint tortfeasor with Kirk.

123.     Retta Leigh's actions were motivated by actual malice and wanton disregard for the Milton Perel Trust and Doug as a beneficiary.

WHEREFORE, Douglas Keil, individually and on behalf of the Milton Perel Trust, requests that this Honorable Court enter judgment against Retta Leigh in the amount of no less than $10,000,000.00 in favor the Milton Perel Trust, for an award of punitive damages in the amount of $350,000.00, for an award of attorney's fees, expenses, and costs pursuant to Virginia Code § 64.2-795, and for such additional and further relief as this Court deems just and proper under the circumstances.

## COUNT IV – COMMON LAW CONSPIRACY
### (Doug individually and on behalf of the Milton Perel Trust against Kirk and Retta Leigh)

124.     The allegations contained in paragraphs 1 through 123 are incorporated herein as if stated verbatim.

125.     Kirk and Retta Leigh combined in a concerted effort for Kirk to breach fiduciary duties owed Doug and to the Milton Perel Trust.

126.     Kirk and Retta Leigh unlawfully acted in furtherance of this conspiracy.

127.     As a result of this conspiracy both Kirk's and Retta Leigh's actions have damaged Doug and the Milton Perel Trust.

128.     Retta Leigh directed and participated in the breaches of fiduciary duty committed by Kirk as Trustee of the Milton Perel Trust. Indeed, her vote was required to implement the scheme of taking out unnecessary debt to funnel massive distributions to herself.

129.     Retta Leigh benefited from Kirk's breaches of fiduciary duty.

130.    Doug and the Milton Perel Trust were damaged by Retta Leigh's actions.

131.    Retta Leigh's actions were motivated by actual malice and wanton disregard for the Milton Perel Trust and Doug as a beneficiary.

WHEREFORE, Douglas Keil, individually and on behalf of the Milton Perel Trust, requests that this Honorable Court enter judgment against Kirk and Retta Leigh, jointly and severally, in the amount of no less than $10,000,000.00 in favor of the Milton Perel Trust, for an award of punitive damages in the amount of $350,000.00, for an award of attorney's fees, expenses, and costs pursuant to Virginia Code § 64.2-795, and for such additional and further relief as this Court deems just and proper under the circumstances.

### COUNT V – CORPORATE INSPECTION - SETH CORPORATION
#### (Doug's Statutory Right to Inspect)

132.    The allegations contained in paragraphs 1 through 131 are incorporated herein as if stated verbatim.

133.    Doug as Trustee of the Doug Trust has been a shareholder in the Seth Corporation for more than six (6) months.

134.    Doug has requested to inspect specific records with reasonable particularity.

135.    Doug has a proper purpose for requesting to inspect records – namely to protect his interests as a shareholder.

136.    The records requested are directly related to Doug's purpose in requesting the records.

WHEREFORE, Douglas Keil, as Trustee of the Douglas P. Keil Revocable Trust, requests that this Honorable Court enter an order compelling the Seth Corporation and its officer and directors Kirk Keil and Retta Leigh Keil to provide all records requested in Exhibits 4-9, all documents subject to Virginia Code § 13.1-770(E), all accounting records for the Seth

Corporation, for attorney's fees and costs pursuant to Virginia Code § 13.1-773 (C), and for such additional and further relief as this Court deems just and proper under the circumstances.

**COUNT VI – DISCLOSURE OF INFORMATION PURSUANT TO THE UNIFORM TRUST CODE**
**(Doug against Kirk)**

137.    The allegations contained in paragraphs 1 through 136 are incorporated herein as if stated verbatim.

138.    Kirk, when he was Trustee of the Milton Perel Trust, had a duty to keep Doug as a qualified beneficiary of the Milton Perel Trust "reasonably informed about the administration of the trust and of the material facts necessary for" them to protect his interests. *See* Virginia Code § 64.2-775(A).

139.    Kirk, when he was Trustee of the Milton Perel Trust, had a duty to "promptly respond to [Doug's] request for information related to the administration of the trust." *Id*.

140.    Kirk has repeatedly failed to provide information to Doug regarding the administration of the Milton Perel Trust. *See* Exhibits 4-9.

141.    Kirk's failure to provide such information was not done in good faith and not formed with a view that the request for information would be unreasonable under the circumstances.

142.    Kirk failed to provide any information the Milton Perel Trust since the 2016 Case.

143.    The information is in Kirk's possession and control, and he could easily have responded to Doug's request for information.

WHEREFORE, the Court should compel Kirk Keil to disclose the information requested in Exhibits 4-9, for an award of attorney's fees and costs to be paid by Kirk Keil pursuant to

Virginia Code § 64.2-795, and for such additional and further relief as this Court deems just and proper under the circumstances.

### DEMAND IS MADE FOR A JURY ON ALL COUNTS TRIABLE TO A JURY

**Dated:  March 5, 2021**                          **Respectfully submitted,**

**DOUGLAS KEIL, individually and as Trustee of the Douglas P. Keil Revocable Trust date April 13, 2015**
**By Counsel**

PETERSON SAYLOR, PLC

/s/ George O. Peterson

_____
**George O. Peterson**   VSB # 44435
gpeterson@petersonsaylor.com
10484 Armstrong Street
Fairfax, Virginia 22030
703.225.3620 / 703.225.3621 (Facsimile)
*Co-Counsel for Plaintiff Douglas Keil*

**SANDS ANDERSON PC**

/s/ Andrew Biondi

_____
**Andrew Biondi**, VSB # 48100
1111 East Main Street, Suite 2400
Post Office Box 1998
Richmond, VA 23218-1998
804.648.1636
804.783.7291 (facsimile)
*Co-Counsel for Plaintiff Douglas Keil*