IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DOUGLAS KEIL, *Individually and as*
*Trustee of the Douglas P. Keil Revocable Trust*
*Dated April 13, 2015,*
     Plaintiff,

v.                                                                Civil No. 3:21cv153 (DJN)

SETH CORPORATION, *et al.*,
     Defendants.

## **MEMORANDUM OPINION**

This case arises out of a mother and her two sons fighting over money in the entities and

trusts established by the mother's father beginning over fifty years ago.  This matter comes

before the Court on the Defendants Seth Corporation's, Kirk Keil's ("Kirk") and Retta Leigh

Keil's ("Retta Leigh") (collectively, "Defendants") Motion to Dismiss (ECF No. 9), moving the

Court to dismiss the Complaint filed by Plaintiff Douglas Keil ("Plaintiff" or "Doug") pursuant

to Federal Rule of Procedure 12(b)(6).  For the reasons stated herein, Defendants' Motion will be

GRANTED IN PART and DENIED IN PART as described below.

### I.     BACKGROUND

#### A.     **Factual Allegations**

At this stage, the Court must accept as true the facts set forth in the Complaint (ECF No.

1).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this backdrop, the Court accepts the

following facts as alleged for purposes of resolving the instant Motions.

### *i.      The Parties and Entities*

Milton Perel, the father of Defendant Retta Leigh Keil and grandfather of Kirk and Doug, formed the Seth Corporation in 1952. (Compl. ¶¶ 28-29.)  The Seth Corporation invests in real estate with a strong track record of success, presently holding a significant amount of real property and investments. (Compl. ¶ 30.)  The Seth Corporation owns 64.79% of Fairfield Development, which owns an apartment complex and vacant land. (Compl. ¶ 31.)  Kirk and Retta Leigh act as the sole officers and directors of Fairfield Development. (Compl. ¶ 31.)

In 1970, Milton Perel executed the Milton Perel Trust, an irrevocable trust funded with shares of the Seth Corporation. (Compl. ¶ 32-33.)  The Milton Perel Trust currently holds 127 of the outstanding 509 shares of the Seth Corporation. (Compl. ¶ 33.)  Until January 2021, Kirk acted as the Trustee of the Milton Perel Trust. (Compl. ¶ 33.)  Retta Leigh receives the net income of the Milton Perel Trust as the lifetime beneficiary, with Doug and Kirk as the remaindermen who will take the remainder of the Milton Perel Trust in equal shares upon the death of Retta Leigh. (Compl. ¶ 34.)  The Milton Perel Trust pays Retta Leigh a substantial income each year and allows the trustee to expend principal for the "support maintenance, education or emergency need of [Retta Leigh]." (Compl. ¶¶ 35-36.)  Before expending principal, the trustee must determine that Retta Leigh has some economic need for the money. (Compl. ¶ 37.)

Currently, the following people or entities own the following number of outstanding shares of the Seth Corporation:

| Kirk Keil, Trustee of the Milton Perel Irrevocable Trust Agreement Dated 12/30/1970 | 127 shares |
|---|---|
| Kirk Keil | 12 shares |
| Doug Keil, Trustee for Douglas Keil Revocable Trust Agreement dated April 13, 2015 | 12 shares |
| Kirk Keil, Trustee of 2003 Kirk sub-Trust for the Retta Leigh Keil Irrevocable Trust | 63 shares |
| Kirk Kiel, Trustee of 2011 Kirk sub-Trust for the Retta Leigh Keil Irrevocable Trust | 116 shares |
| Retta Leigh Keil, Trustee of the Retta Keil Revocable Trust | 179 shares |
| **Total** | **509 shares** |

(Compl. ¶ 38.) The Retta Keil Revocable Trust acquired the 179 shares from the 2003 Doug Sub-Trust and 2011 Sub-Trust when Kirk, as Trustee, sold the shares to the Retta Keil Revocable Trust in exchange for cash. (Compl. ¶ 39.) Doug claimed that Kirk sold the shares at a substantially undervalued price, resulting in Doug filing a previous lawsuit against Defendants in 2016. (Compl. ¶ 39.)

## ii.   *The 2016 Federal Lawsuit*

On May 6, 2016, Doug filed a complaint against Kirk and Retta Leigh, alleging that Kirk and Retta Leigh breached the fiduciary duties owed to Doug as the beneficiary of multiple trusts. ("2016 Complaint" ((ECF No. 1), *Keil v. Keil*, No. 3:16cv665.) Specifically, Doug alleged that Kirk transferred one share of the Seth Corporation from the Milton Perel Trust to Retta Leigh, which Doug alleges will pass to Kirk as part of Retta Leigh's estate rather than to both Kirk and Doug through the Milton Perel Estate. (2016 Compl. ¶¶ 19-24.) Doug alleged that Kirk and Retta Leigh effectuated the transfer to ensure that Kirk would become the majority shareholder of the Seth Corporation upon Retta Leigh's death. (2016 Compl. ¶ 46.) Additionally, Retta Leigh and Kirk, as trustees of the sub-trusts, substituted cash for the 63 shares in the 2003 Doug sub-Trust and 116 shares in the 2011 Doug sub-Trust. (2016 Compl. ¶ 50.) This reduced Doug's interest in the Seth Corporation — upon the death of Retta Leigh — from approximately

3

50% to 14.73%, with Kirk owning the remaining 85.27% (2016 Compl. ¶ 56.)  Likewise, it reduced Doug's interest (through trusts and interest in the Seth Corporation) in Fairfield Corporation — upon the death of Retta Leigh — to a derivative interest.  (2016 Compl. ¶ 57.) Although Kirk and Retta Leigh retained a business evaluation expert to determine the price of the shares in the substitution, and thus the amount of cash to pay into Doug's sub-trusts, Doug alleged that the expert undervalued the shares, leaving Doug's sub-trusts with less valuable assets than they would have held had the transfer not occurred.  (2016 Compl. ¶¶ 58-64.)  Based on these transactions, Doug alleged two counts of breach of fiduciary duty against Kirk, one count of aiding and abetting a breach of fiduciary duty against Retta Leigh and one count to void the challenged transactions.

Kirk filed an answer denying the allegations and Retta Leigh moved to dismiss the counts against her.  Doug ultimately amended his complaint and the parties subsequently settled the case.  On March 28, 2017, the parties executed a Settlement Agreement (ECF No. 1-2), which Doug attached to the Complaint in the instant matter.  The Settlement Agreement provided for a payment from Retta Leigh and Kirk to Doug's sub-Trusts in the amount of $1,800,000. (Settlement Agreement at 2.)  It also provided that Retta Leigh would contribute a total of $140,000 to the 529 educational savings accounts held for the benefit of Doug's children. (Settlement Agreement at 2.)  Defendants denied any wrongdoing or liability to Doug in agreeing to make the payments provided for in the Settlement Agreement.

Additionally, the Settlement Agreement provided that Doug would resign from his board and officer positions at the Seth Corporation and Fairfield, effective March 15, 2017. (Settlement Agreement at 3.)  The parties further agreed that "a mutually agreeable independent corporate trustee, based in Richmond, Virginia, will become trustee of the Milton Perel Trust."

4

(Settlement Agreement at 3.)[1]  Further, Kirk agreed to provide Doug with annual financial statements and semi-annual management reports for Seth Corporation and Fairfield, "all of which shall be treated by Douglas Keil as proprietary information for his use only." (Settlement Agreement at 3.)  Additionally, Kirk agreed to provide Doug with an accounting of the Milton Perel Trust and the Doug sub-Trusts during the time period from January 1, 2017 through the date that Kirk ceases to have custody of control over the assets of those trusts. (Settlement Agreement at 3.)

### iii.    The Challenged Transactions

Doug challenges several transactions that occurred following the execution of the Settlement Agreement.  First, on July 26, 2017, the Seth Corporation declared a dividend that resulted in a payment to the Milton Perel Trust in the amount of $212,082. (Compl. ¶ 55.)  Then again on November 8, 2017, the Seth Corporation declared a dividend resulting in a payment of $561,394.89. (Compl. ¶ 55.)  On June 8, 2018, and December 14, 2018, the Seth Corporation declared dividends that each resulted in a payment of $162,180 to the Milton Perel Trust. (Compl. ¶ 55.)  As the net income beneficiary of the Milton Perel Trust, Retta Leigh received these dividends from the Milton Perel Trust. (Compl. ¶¶ 55-59.)  Doug alleges that these annual dividend payments since 2017 "are nearly double what they had been historically." (Compl. ¶ 57.)  In all, Doug claims that over $2,500,000 in total dividends have passed through the Milton Perel Trust to Retta Leigh since the Settlement Agreement. (Compl. ¶ 58.)  Doug claims

---

[1]     The parties did not provide a date for when an independent corporate trustee would become trustee.  Although Doug alleges that Kirk refused to step down as trustee so that he could commit the breaches at issue in the Complaint (Compl. ¶ 25), it appears from the correspondence attached to the Complaint that finding an institution willing to serve as successor trustee faced challenges, as multiple institutions would not serve as trustee. (ECF No. 1-8.)

that neither the Seth Corporation nor Fairfield Development produced these funds in the normal course of business operations.  (Compl. ¶ 61.)

To finance these dividends, Doug alleges that Kirk and Retta Leigh increased the debt owed by Fairfield Development.  (Compl. ¶ 62.)  Specifically, Defendants caused the debt owed by Fairfield Development to increase from $1,788,000 before the Settlement Agreement to over $4,481,000 in 2017.  (Compl. ¶ 63.)  Doug claims that this diminished the long-term worth of Fairfield Development, the Seth Corporation and the Milton Perel Trust with no legitimate business purpose.  (Compl. ¶ 65.)  Doug claims that Defendants orchestrated these transactions to fund the payments agreed to in the Settlement Agreement and to benefit Kirk, who would ultimately receive the distributions upon the death of Retta Leigh, at the expense of Doug.

Further, Doug alleges that he requested information from Kirk related to the Seth Corporation and the Milton Perel Trust.  (Compl. ¶ 42; ECF No. 1-4.)  However, Kirk refused to provide the requested information.  (Compl. ¶¶ 43-49.)  On January 28, 2019, Kirk (through counsel) advised Doug that he would provide information regarding the Seth Corporation if Doug entered into a mutually agreeable confidentiality agreement.  (Compl. ¶ 51.)  Doug refused to enter into a confidentiality agreement or negotiate the terms of one and, instead, indicated that he would prefer to litigate whether the Seth Corporation could require him to enter into a confidentiality agreement.  (ECF No. 1-11.)

### iv.   *Plaintiff's Complaint*

Plaintiff's Complaint alleges six counts arising from the factual allegations described above.  In Count I, Doug brings a derivative action on behalf of the Seth Corporation against Kirk and Retta Leigh in their capacities as directors of the Seth Corporation.  (Compl. ¶¶ 71-84.)  Specifically, Doug alleges that Kirk and Retta Leigh breached their fiduciary duty to the Seth

Corporation by distributing the dividends and saddling Fairfield Development with additional debt, which damaged the long-term interests of the Seth Corporation and Fairfield Development. (Compl. ¶¶ 73-78.) Doug seeks a judgment of at least $10,000,000 in addition to $350,000 in punitive damages.

In Count II, Doug alleges that Kirk, as Trustee of the Milton Perel Trust, breached his duty of loyalty to the beneficiaries of the Milton Perel Trust by voting shares of the Seth Corporation inconsistent with the interests of the Milton Perel Trust in taking on unnecessary debt. (Compl. ¶ 101.) Additionally, Doug alleges that Kirk breached his fiduciary duty by distributing the dividends received by the Milton Perel Trust to Retta Leigh as income. (Compl. ¶ 103.) Instead, Doug claims that Kirk should have recharacterized the distributions as principal and retained the funds as assets of the trust. (Compl. ¶¶ 101-03.) Doug asks the Court for a $10,000,000 judgment, $350,000 in punitive damages and the imposition of a constructive trust on the distributions to Retta Leigh.

In Count III, Doug alleges that Retta Leigh aided and abetted the above breaches of fiduciary duty. (Compl. ¶¶ 116-23.) Doug alleges that Retta Leigh was aware of Kirk's fiduciary duty to Doug. (Compl. ¶ 116.) Despite this awareness, Retta Leigh directed and participated in the breaches, including by voting to implement the dividend scheme. (Compl. ¶ 117.) Doug seeks a judgment of $10,000,000 and punitive damages in the amount of $350,000.

In Count IV, Doug alleges a claim of common law conspiracy against Kirk and Retta Leigh, claiming that Defendants "combined in a concerted effort for Kirk to breach fiduciary duties owed Doug and to the Milton Perel Trust." (Compl. ¶ 125.) Defendants' actions allegedly damaged Doug and the Milton Perel Trust to the benefit of Defendants. (Compl.

¶¶ 127-29.)  Doug again seeks a $10,000,000 judgment and punitive damages in the amount of $350,000.

In Count V, Doug brings a claim for corporate inspection, requesting an order compelling the Seth Corporation to provide the records of the Seth Corporation that he has demanded and is entitled to under Virginia law. (Compl. ¶¶ 132-36.)  Similarly, in Count VI, Doug seeks disclosure of information regarding the Milton Perel Trust.  (Compl. ¶¶ 138-43.)

### v.    *Defendants' Motion to Dismiss*

Defendants responded to Plaintiff's Complaint by filing a Motion to Dismiss.  (ECF No. 9.)  In the accompanying memorandum ("Defs.' Mem." (ECF No. 10)), Defendants argue that the Court should dismiss all six counts against them.  As a threshold matter, Defendants argue that Plaintiff's claims in Counts I-IV fail, because Plaintiff has not pled recoverable damages. (Defs.' Mem. at 6.)  Specifically, Doug pleads only speculative damages, because he can only claim damages for the reduction in the value of his shares of the Seth Corporation after he has sold the shares.  (Defs.' Mem. at 7.)  Similarly, he can only speculate as to any damages he could recover based on diminution of the assets in the Milton Perel Trust, because his right to any of the funds in the Milton Perel Trust depends on Retta Leigh passing away before him and before Fairfield Development pays back the debts.  (Defs.' Mem. at 7-8.)

With respect to Count I, Defendants claim that Doug cannot challenge the wisdom of the corporate decisions.  (Defs.' Mem. at 9.)  Defendants seek to invoke the business judgment rule, which would prohibit the second-guessing of Defendants' decision to declare and distribute dividends to all of the Seth Corporation's shareholders on a *pro rata* basis.  (Defs.' Mem. at 10.) With respect to Count II, Defendants argue that Plaintiff cannot plead a breach of fiduciary duty with respect to treating the dividend paid to the Milton Perel Trust as income rather than

8

principal. (Defs.' Mem. at 16.)  Specifically, Defendant argues that the trust agreement and the Virginia Code required that Kirk treat the payment received as income, precluding any claim that Kirk breached his fiduciary duty. (Defs.' Mem. at 16.)

With respect to Counts III and IV, Defendants argue that Plaintiff lacks standing to sue Retta Leigh on behalf of the Milton Perel Trust, because he only constitutes a beneficiary and she constitutes a third party. (Defs.' Mem. at 19-20.)  Additionally, Defendants argue that Count III fails, because Virginia has not recognized a cause of action for aiding and abetting a breach of a fiduciary duty. (Defs.' Mem. at 20.)  And, even assuming a cause of action exists, Defendants argue that Plaintiff fails to plead the necessary elements of such a cause of action. (Defs.' Mem. at 21-22.)  Likewise, with respect to Count IV, Defendants argue that Plaintiff fails to plead all of the elements of a civil conspiracy. (Defs.' Mem. at 22.)  Specifically, Defendants allege that the unlawful activity complained of did not actually violate the law, and Plaintiff has not alleged the required agreement to engage in unlawful activity. (Defs.' Mem. at 23-24.)

Defendants argue that the Court must dismiss Count V, because they have agreed to provide corporate books and records upon the entry of a protective order. (Defs.' Mem. at 24.) Likewise, Defendants argue that the Court must dismiss Count VI, because Defendant seeks records from Kirk regarding the Milton Perel Trust that go beyond the scope of documents that a trustee must provide to a beneficiary and, in any event, Kirk no longer serves as the trustee of the Milton Perel Trust. (Defs.' Mem. at 25.)  Consequently, Defendants ask the Court to dismiss the Complaint in its entirety.

Plaintiff filed an opposition to Defendants' Motion (Br. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Mem.") (ECF No. 16)), to which Defendants replied. (Defs.' Reply Br. in Further Supp. of Mot. to Dismiss ("Defs.' Reply") (ECF No. 18).)  This matter is now ripe for review.  The

Court dispenses with oral argument, because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,

765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

For the purposes of deciding a motion to dismiss, the Court will only consider those factual allegations set forth in the Complaint. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Additionally, the Court may consider documents attached to the complaint, Fed. R. Civ. P. 10(c), as well as "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Where, as here, the complaint expressly relies upon documents integral to the complaint that the plaintiff did not attach, the Court can also consider those documents on a motion to dismiss. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'") (quoting *Phillips*, 190 F.3d at 618). Where the bare allegations of the complaint conflict with any document incorporated therein, the document prevails. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

### III.   ANALYSIS

Defendants argue that the Court must dismiss all six counts against them, pointing to alleged deficiencies for each respective count. However, as a threshold matter, Defendants argue that Plaintiff cannot maintain Counts I-IV, because Doug bases his damages on contingencies and speculation. Therefore, before reaching the merits of Defendants' arguments as to each count, the Court will first determine whether Plaintiff has sufficiently pled damages.

11

A.     **Plaintiff's Suit Does Not Fail for Lack of Recoverable Damages.**

Defendants claim that Doug has not pled recoverable damages, "because the alleged

damage to Doug's expectancy interests described in his Complaint has not occurred, and it will

not occur unless Retta Leigh dies before the loan in question is repaid." (Defs.' Mem. at 6.)

Defendants essentially lodge a two-front attack on Doug's damages allegations: (1) that Doug

cannot recover speculative damages that he has not proved with reasonable certainty, and (2) that

a contingent remainderman like Doug may not sue for damages. Both arguments fail, as the first

mischaracterizes Doug's burden at this stage of the litigation and the second mischaracterizes the

relief sought by Doug.

ii.     *Doug Does Not Need to Prove Damages with Reasonable Certainty at*
*the Pleading Stage.*

Defendants argue that Doug cannot recover damages, because he cannot prove them

"with reasonable certainty." (Defs.' Mem. at 6.) However, at the pleading stage, a plaintiff need

not prove his damages with reasonable certainty. Indeed, "at the motion to dismiss stage the

general allegation that plaintiffs have suffered damage is sufficient for the claim to survive,"

because "there is no requirement to plead precise damages." *Job v. Simply Wireless, Inc.*, 160 F.

Supp. 3d 891, 900 (E.D. Va. 2015). Here, Plaintiff alleges that Defendants' actions have

"diminished the long-term worth of Fairfield Development, the Seth Corporation, and, by

extension, the Milton Perel Trust." (Compl. ¶ 65.) Additionally, Plaintiff alleges that the loan

"will ultimately be borne in large part by Doug's remainder share of the Milton Perel Trust."

(Compl. ¶ 66.)[2] Moreover, Plaintiff alleges that Defendants' actions caused the Seth Corporation

---

[2]     Defendants' argument that this allegation admits that Doug will only suffer an injury if
Retta Leigh dies before repayment of the loan falls flat. That Doug will bear more of a burden
from the debt than Retta Leigh does not mean that Doug will only bear the burden if Retta Leigh
dies before repayment. Even if Retta Leigh dies after the loan is repaid, the money used to repay
the loans could otherwise have been put to use to increase the value of the Fairfield and the Seth

to take on "massive debt" with "no economic justification." (Compl. ¶ 74.) These actions allegedly damaged the Seth Corporation and Doug, who owns twelve shares of the Seth Corporation. (Compl. ¶ 76-78.) Moreover, Plaintiff alleges that Kirk has caused "a significant diminution in the value of the Milton Perel Trust as he has caused a significant asset of the Milton Perel Trust to take on a substantial debt for the primary purpose of distributing out cash to Retta Leigh." (Compl. ¶ 107.) As a result, Doug alleges that both he and the Milton Perel Trust have suffered damages by Kirk's conduct. (Compl. ¶ 109.) As a result, Doug asks for a $10,000,000 judgment in favor of the Seth Corporation, a $10,000,000 judgment in favor of the Milton Perel Trust and the imposition of a constructive trust over the distributions to Retta Leigh Keil. (Compl. at 18-21.)

The cases to which Defendants cite do not help their argument at the motion to dismiss stage and, instead, concern a plaintiff's obligation to prove its damages at later stages of the litigation. (*See* Defs.' Mem. at 6-7 (collecting cases).) For example, in *Little v. Cooke*, the Supreme Court of Virginia reduced the trial court's award of damages to the plaintiff following a bench trial, because the evidence at trial did not support the full award of damages. 652 S.E.2d 129, 139 (Va. 2007). Likewise, in *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 732 S.E.2d 690 (Va. 2012) and *SunTrust Bank v. Farrar*, 675 S.E.2d 187 (Va. 2009), two cases that Defendants cite, involved the Supreme Court of Virginia reversing an award of damages that followed bench trials with evidence on damages, which the Supreme Court of Virginia ultimately found insufficient. The claims for damages in *Little*, *Batt*, and *Farrar* all failed for uncertainty at the proof stage. The instant case, however, has not yet passed the pleadings stage. Accordingly,

---

Corporation and, ultimately, the Milton Perel Trust. Instead, according to Plaintiff, that money must now go towards repayment of a loan that had no rational business purpose and only served to personally enrich Defendants.

at this point, the Court will not hold Plaintiff to the burden that he will ultimately need to meet to recover damages.

Plaintiff has sufficiently pled damage to the Seth Corporation, the Milton Perel Trust and himself to survive Defendants' Motion to Dismiss.  He need not prove the amount of damages — he must simply plead the existence of damages to Rule 8(a)'s satisfaction.  Discovery may ultimately prove no basis for any damages stemming from Defendants' action, at which point Defendants will have a valid argument on the merits.  But, at this stage, he has satisfied the requirements of Rule 8(a) with respect to pleading the specificity of his damages. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007) (pleadings must state a basis for "plausible liability").

### ii.    *Doug's Status as a Contingent Remainderman Does Not Preclude His Suit.*

Likewise, Plaintiff's status as a contingent beneficiary does not preclude his suit. Defendant argues that "courts forbid contingent remaindermen like Doug from asserting claims for damages." (Defs.' Mem. at 9.)  This argument fails to account for the fact that Doug asserts more than claims for damages for himself.

The "fundamental" standing of a trust beneficiary to maintain a suit against a trustee for breach of fiduciary obligations "does not apply solely to vested beneficiaries." *Makel v. Tredegar Tr. Co.*, 2005 WL 3489768, at *2 (Va. Cir. Oct. 24, 2005).  First, a trustee owes a duty of loyalty and impartiality to the beneficiaries of a trust, as the statute requires that "[a] trustee shall administer the trust solely in the interests of the beneficiaries."  Va. Code Ann. § 61.2-764(A).  Further, "if a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."  Va. Code Ann. § 64.2-765.  And, the beneficiaries to whom the trustee

owes these duties include more than simply current beneficiaries, as the Virginia Code applies to all beneficiaries, whether vested or contingent. Va. Code Ann. § 64.2-701 (defining "beneficiary" to include a person that "has a present or future, vested or contingent, beneficial interest in a trust"); *see Sturgis v. Stinson,* 404 S.E.2d 56, 58 (Va. 1991) ("Under general trust law principles, where, as here, a trust is created for successive beneficiaries, the trustee has a duty to deal impartially with them."); *see also Trimmer v. Savage*, 2014 WL 10190113, at *1 (Va. Cir. July 8, 2014) ("The Trustees had a duty to preserve the Trust property for both the beneficiary, Mrs. Trimmer, and the remainder-men."). Defendants do not seriously contest that Kirk, when serving as the trustee of the Milton Perel Trust, owed a duty to Doug. Instead, their standing challenges focus on Doug's ability as contingent remainderman to sue for a breach of trust. However, given that the trustee owes a duty to successive beneficiaries, it follows that a contingent beneficiary has at least some recourse against a trustee who has breached that duty.

Virginia law provides that a "violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Va. Code Ann. § 64.2-792(A). That same code provision sets forth the remedies for such a breach. Among other remedies, the Court may "[c]ompel the trustee to redress a breach of trust by paying money, restoring property, or other means." Va. Code Ann. § 64.2-792(B)(3). Further, the Court may "void an act of the trustee, impose a lien or constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds" or "order any other appropriate relief." Va. Code Ann. § 64.2-792(9)-(10). The question then becomes who may obtain which remedies — all beneficiaries or only those with a vested interest?

Defendants correctly point out that a contingent remainderman has a limited ability to challenge a trustee's actions. "As a contingent remainderman has no vested interest in the

property he cannot maintain a common law action to recover waste or damages in the nature of waste," because "he will not be allowed to recover damages for that which may not be his." *Ivey v. Lewis*, 112 S.E. 712, 716 (Va. 1922). But, contrary to Defendants' arguments, this does not foreclose all suits by a contingent remainderman. Indeed, the court in *Ivey* went on to state that "the rights of a contingent remainderman are much more extensive in equity than at law," and that the remainderman "should be allowed to prevent the destruction of that which may become his." *Id.* Accordingly, although a contingent beneficiary may not seek legal relief such as damages, he may seek equitable relief.

A contingent beneficiary has among his recognized equitable remedies an affirmative injunction to compel a trustee to act according to its duties, a negative injunction to prevent waste and a suit to compel a trust to redress a breach of trust. Va. Code Ann. § 64.2-792; *Makel*, 2005 WL 3489768, at *2 (collecting cases from the Supreme Court of Virginia and citing the Restatement (Second) of Trusts § 199 (1992)). Because Kirk no longer serves as the trustee, Plaintiff cannot (and does not) seek the available injunctive relief. Thus, he may seek only the specific remedies available to redress a breach of trust.

Here, the $10,000,000 that Plaintiff seeks constitutes an equitable remedy intended to redress the alleged breach of trust. Indeed, Plaintiff does not seek a money judgment payable to himself. Instead, he seeks a money judgment payable to the Seth Corporation (Count I) or the Milton Perel Trust (Counts II-IV). Additionally, in Count II he asks the Court "to impose a constructive trust over the wrongful distributions to Retta Leigh Keil." (Compl. at 19.) Through these equitable remedies he seeks to restore the *res* of the trust to what it would be but for the alleged breaches — essentially restitution, a quintessential form of equitable relief. While Plaintiff may ultimately struggle to prove with reasonable certainty that Defendants deprived the

trust of $10,000,000, this does not change the fact that he has pled a recoverable remedy.[3]

Consequently, Defendants threshold argument that Plaintiff's suit fails for lack of recoverable

damages fails. The Court will now turn to each individual count.

**B.    Plaintiff Has Pled a Breach of Fiduciary Duty in Count I.**

In Count I, Plaintiff alleges that Defendants breached their duties as directors of the Seth

Corporation in declaring a dividend and distributing it to the shareholders. (Compl. ¶¶ 72-74.)

Plaintiff alleges that Defendants saddled Fairfield — a significant asset of the Seth Corporation

— with substantial debt solely for the purpose of declaring a dividend and funneling it to Retta

Leigh. (Compl. ¶¶ 72-74, 78.) Defendants move to dismiss Count I on the grounds that

Defendants made their decisions in accordance with their good faith business judgment (the

"business judgment rule") and, therefore, they cannot face liability for them. (Defs.' Mem. at 9.)

Plaintiff responds that the business judgment rule constitutes an affirmative defense not

applicable at the motion to dismiss stage. (Pl.'s Mem. at 6-7.) Defendants counter that, rather

than constituting an affirmative defense, the business judgment rule "is best understood as a

rebuttable judicial presumption that directors have discharged their duties under code section

13.1-690 and that their decision should not be second guessed." (Defs.' Reply at 6.)

The Virginia Code sets out the general standards for the conduct of a director, stating that

"[a] director shall discharge his duties as a director, including his duties as a member of a

committee, in accordance with his good faith business judgment of the best interests of the

---

[3]    The Court notes that punitive damages — a legal remedy — are "generally not available in an action by a beneficiary against a trustee for breach of a trust." *Powell v. Chesapeake and Potomac Telephone Co. of Va.*, 780 F.2d 419, 424 (4th Cir. 1985). However, Defendants have not moved specifically to dismiss the claims for punitive damages and, therefore, the parties have not briefed whether this case falls into the general class of trust actions that preclude the recovery of punitive damages.

17

corporation." Va. Code Ann. § 13.1-690(A). If the director performs his duties in that manner, then section 13.1-690(C) provides a safe harbor that shields the director from liability for actions taken as a director. Va. Code Ann. § 13.1-690(C). The plaintiff bears the burden of proving that the director did not take an action with the director's good faith business judgment of the best interests of the corporation. Va. Code Ann. § 13.1-690(D). Generally, courts do not measure a director's compliance with the § 13.1-690(A) against what a reasonable person would do in similar circumstances. *Willard ex rel. Moneta Bldg. Supply, Inc. v. Moneta Bldg. Supply, Inc.*, 515 S.E.2d 277, 284 (Va. 1999). Instead, "the relevant inquiry focuses on the subjective beliefs of the director and on the process that the director employed to arrive at a defensible business decision." *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 790 (Bankr. E.D. Va. 2012). Directors "are presumed to have acted properly and in good faith in the exercise of their business judgment . . . and are called to account for their actions only when they are shown to have engaged in self-dealing or fraud, or have acted in bad faith." *Giannotti v. Hamway*, 387 S.E.2d 725, 731 (Va. 1990). Some courts have described the business judgment rule as an affirmative defense, despite the statute plainly placing on a plaintiff the burden of proving that a director did not act in accord with his good faith business judgment in the best interest of the corporation. *Compare LandAmerica*, 470 B.R. at 790 ("This safe harbor afforded to directors must be asserted as an affirmative defense."), *with* Va. Code Ann. § 13.1-690(D) ("A person alleging a violation of this section has the burden of proving the violation.").

However, "when a conflict of interest as defined in § 13.1-691 exists . . . the burden shifts to the directors to show that their actions complied with the requirements of that section." *Izadpanah v. Boeing Joint Venture*, 412 S.E.2d 708, 709 (Va. 1992). Section 13.1-691 defines a conflict of interest as "a transaction with the corporation in which a director of the corporation

18

has an interest that precludes the director from being a disinterested director." Va. Code Ann.

§ 13.1-691(A).  This shifting of the burden-of-proof "is an exception to the business judgment

rule."  *Giannotti*, 387 S.E.2d at 731.  To meet his burden, the director must "prove that the

transaction was fair and reasonable to the corporation." *Id.*

       Regardless of whether the business judgment rule serves as a rebuttable presumption or

an affirmative defense, viewing the facts in the light most favorable to Plaintiff, the Complaint

contains sufficient factual allegations for Count I to survive.  Plaintiff alleges that Defendants

declared annual dividends exceeding $4.6 million since the Settlement Agreement, and that these

dividends double the historical dividends of the Seth Corporation.  (Compl. ¶¶ 57, 61.)  Plaintiff

alleges that the "source of these funds was not the normal business operations of the Seth

Corporation or Fairfield Development."  (Compl. ¶ 61.)  Moreover, Plaintiff alleges that

Defendants substantially increased the debt owed by Fairfield "for the primary purpose of paying

out large dividends inuring to the benefit of Retta Leigh and Kirk."  (Compl. ¶ 62.)  This

decision to "burden the Seth Corporation with debt appears to have been made as a means to

funnel funds to Kirk and Retta Leigh to cover the cost of the Settlement Payment."  (Compl.

¶ 64.)  Plaintiff alleges that this debt had "no legitimate business purpose" and that it diminished

the long-term worth of the Seth Corporation.  (Compl. ¶ 65.)   According to Plaintiff, "[t]he

distributions were made in bad faith and not remotely in the best interests of the Seth

Corporation," and "were made without any rational business purpose."  (Compl. ¶ 73.)  Plaintiff

supports this allegation by stating that "[r]ational directors and officers of a corporation would

not take on a significant corporate debt for the purpose of being able to distribute out massive

amounts of cash" to benefit themselves.  (Compl. ¶ 73.)  The transactions had "no economic

justification" and, instead, Defendants' "conduct was done in bad faith" as "the result of

improper motives that amount to waste of corporate and trust assets." (Compl. ¶ 74.)

Additionally, Plaintiff alleges that Defendants failed to rely upon the advice of counsel, public

accountants or other professionals.[4] (Compl. ¶ 75.) They "damaged the long-term interests of

Seth Corporation and Fairfield Development" by their actions that "were motivated by spite,

actual malice, and wanton disregard for the best interests of the Seth Corporation." (Compl.

¶¶ 76, 78.)

Defendants argue that Plaintiff has not properly alleged that Defendants violated the

statutes governing distributions by alleging that the distributions left the Seth Corporation unable

to pay its bills. (Defs.' Mem. at 14-16.) Section 13.1-653 states that the directors "may

authorize and the corporation may make distributions to its shareholders" except in certain

circumstances, such as when the distributions would leave the company insolvent. Va. Code

Ann. § 13.1-653(A), (C). Additionally, the Virginia Code provides for liability of a director who

approves "a distribution in excess of what may be authorized and made pursuant to this chapter

or the article of incorporation." Va. Code Ann. § 13.1-692(A). However, Defendants do not cite

any authority supporting their argument that these provisions provide the only vehicle to hold a

director liable for a distribution. Nor do they cite any authority for the argument that complying

with the minimum requirements of these provisions relieves the director of acting in good faith

and in the best interests of the corporation — *i.e.*, that a director cannot face liability for a

distribution made in bad faith so long as the corporation remains solvent. Indeed, Defendants

state that "[e]xcept for the narrow circumstances set out in [§ 13.1-653(C)], directors are free,

pursuant to Va. Code Ann. § 13.1-690, to exercise their good faith business judgment in

---

[4]     The Court gives no weight to Plaintiff's allegation that Defendants objected to, instead of answering, an interrogatory in state court asking if they relied on professional advice. Instead, the Court relies on Plaintiff's allegation that they did not rely on professional advice.

determining whether to authorize a dividend." (Defs.' Mem. at 13.) But here, Plaintiff alleges that Defendants did not exercise their good faith business judgment in authorizing a dividend, so this argument fails.

Although Plaintiff has not alleged an abundance of facts that Defendants failed to exercise their good faith business judgment in the best interests of the Seth Corporation, he has alleged facts sufficient to overcome a motion to dismiss. Making all reasonable inferences in Plaintiff's favor, the Complaint paints a picture of Kirk and Retta Leigh acting in bad faith to make an indefensible business decision that siphoned money from the Seth Corporation and Fairfield. These actions served to line their own pockets to the detriment of the Seth Corporation and Fairfield, rather than to advance the best interests of the companies. Defendants' arguments as to the legitimacy of the transactions may ultimately prove correct, but the allegations in the Complaint do not reveal a defensible business decision made in good faith. Moreover, Plaintiff's allegations of a conflict of interest suggest that Defendants will need to "prove that the transaction was fair and reasonable to the corporation." *Giannotti*, 387 S.E.2d at 731. But, Defendants have not met that burden based on what the Court may consider at this stage. Accordingly, Plaintiff has pled facts sufficient to overcome Defendants' Motion with respect to Count I.

## C.    Plaintiff Has Sufficiently Pled a Breach in Count II.

In Count II, Plaintiff alleges that Kirk breached his duty of loyalty to the Milton Perel Trust while serving as the trustee, including by distributing the dividend paid by the Seth Corporation to the Milton Perel Trust as income rather than converting it to principal, and in voting the shares of the Seth Corporation inconsistent with the interests of the Milton Perel Trust.

21

Defendant moves to dismiss this Count, arguing that the law required Kirk to distribute the

dividend as income instead of converting it to principal. The Court agrees with both to an extent.

### i.  *Plaintiff's Claim for Breach Based on the Failure to Adjust the Income from the Distribution to Principal Fails.*

With respect to Plaintiff's claim that Kirk should have converted the income to principal,

Virginia trust law provides a mechanism for such a conversion, but it does not apply to these

circumstances. Specifically, the statute provides that a "fiduciary may adjust between principal

and income to the extent the fiduciary considers necessary" if three conditions apply:

1. The fiduciary invests and manages trust assets as a prudent investor;

2. The terms of the trust describe the amount that may or shall be distributed to a beneficiary by referring to the trust's income; and

3. The fiduciary determines, after applying the rules in subsection A of § 64.2-1001, that the fiduciary is unable to comply with subsection B of § 64.2-1001.

Va. Code Ann. § 64.2-1002(A)-(B). Importantly, the statute uses the permissive *may* rather than

the mandatory *shall*, suggesting that the General Assembly did not intend to require a fiduciary

to adjust between principal and income in all similar circumstances. Moreover, Plaintiff does not

plead that all of the conditions would apply. Although he pleads that Kirk had a duty to

prudently invest the assets[5] (Compl. ¶ 104), he does not plead that the terms of the trust "describe

the amount that may or shall be distributed to a beneficiary by referring to the trust's income."

Likewise, the Court's review of the Trust Agreement does not reveal such a description.

---

[5]      Paragraph 6(a) of the Trust Agreement arguably waives the trustee's duty to invest and manage trust assets as a prudent investor, instead only requiring the trustee to invest "as they may deem advisable, whether or not such investment be of a character authorized for investment by fiduciaries." Because the Court finds that Defendant did not have a duty to adjust the distribution from income to principal, it need not resolve the question of whether this provision abrogated his discretion to do so. *See* Va. Code Ann. § 64.2-781 (providing ways in which a trust agreement can waive the prudent investor rule, none of which unambiguously apply here).

22

Similarly, Plaintiff has not pled that Kirk determined, or should have determined, that he could not comply with § 63.2-1001(B).

Additionally, the statute expressly forbids the trustee from making an adjustment "if the fiduciary is a beneficiary of the trust" or, if not a beneficiary, "the adjustment would benefit the fiduciary directly or indirectly." Va. Code Ann. § 64.2-1002(C)(7)-(8). As Plaintiff alleges, Kirk constituted a beneficiary or, at the very least, someone who would benefit from the adjustment of income to principal. Plaintiff argues that this does not apply, because the statute gives Kirk a way around this prohibition. (Pl.'s Mem. at 12.) True, the statute provides that "[a]ny beneficiary or fiduciary may petition the circuit court for appointment of cofiduciary who would be permitted to make an adjustment not permitted by the other fiduciary or fiduciaries" if the trustee would benefit. Va. Code Ann. § 64.2-1002(E). Here, again, the statute does not mandate such a course of action; instead, it merely allows a fiduciary to petition the circuit court. As such, this provision does not save Plaintiff's claim with respect to the possible adjustment.

Plaintiff's reliance on § 64.2-1009 also misses the mark. (Compl. ¶ 99.) That section provides guidance to a trustee for allocating money between principal and income. The default provision reads as follows: "[e]xcept as otherwise provided in this section, a trustee shall allocate to income money received from an entity." Va. Code Ann. § 64.2-1009. The exceptions provided for follow, stating that a "trustee shall allocate the following receipts from an entity to principal:

    (1)  property other than money;

    (2)  money received in one distribution or a series of related distributions in exchange for part or all of a trust's interest in the entity;

    (3)  money received in total or partial liquidation of the entity; and

> (4) money received from an entity that is a regulated investment company or a real estate investment trust if the money distributed is a capital gain dividend for federal income tax purposes."

Va. Code Ann. § 64.2-1009.

Here, Plaintiff has not pled that any of these conditions apply. First, Plaintiff alleges that the large distribution involved money, rather than property other than money. Second, Plaintiff does not allege that the Milton Perel Trust received the money in exchange for the Trust's interest in Fairfield. Third, Plaintiff does not allege that the Trust received the money as part of a liquidation of Fairfield. Finally, Plaintiff does not allege that the Trust received the money as part of a capital gain dividend for federal income tax purposes. And, based on the facts pled by Plaintiff, it does not appear as if Plaintiff could plead facts that would allow his claim to proceed under one of these exceptions. Accordingly, Plaintiff's claim for a breach based on Kirk's failure to treat the distribution as principal fails. However, Plaintiff has pled more breaches than just the failure to adjust the income to principal in Count II.

### ii.   *Plaintiff Has Pled Facts Sufficient to Allege a Breach with Respect to the Declaration of a Dividend.*

Plaintiff also alleges in Count II that Kirk breached his duty to the Milton Perel Trust in voting as an officer of the Seth Corporation to declare dividends. (Compl. ¶ 101.) Because Defendants focused their argument on the alleged adjustment breach, they offer little in opposition to this breach, other than pointing out that this did not involve self-dealing, and the law and Trust Agreement allowed for the declaration of the dividend. (Defs.' Mem. at 18-19.) Taking Plaintiff's allegations as true, the Court finds that Plaintiff has pled sufficient facts to state a claim for a breach of fiduciary duty with respect to the manner that Kirk voted the shares of the Seth Corporation.

Plaintiff's claim that Kirk breached his duty to the Trust stems from his argument that Kirk owed a greater duty of loyalty to the Trust as the trustee than he did to the Seth Corporation as a director. (Compl. ¶ 105.) This argument finds support in the law and the as-pled facts, even if Plaintiff may ultimately struggle to prove his argument with evidence. Of course, a "trustee shall administer the trust solely in the interests of the beneficiaries." Va. Code Ann. § 64.2-764(A). This duty extends to the trustee voting on shares of stock. Specifically, "[i]n voting shares of stock or in exercising powers of control over similar interests in other forms of enterprise, the trustee shall act in the best interests of the beneficiaries." Va. Code Ann. § 64.2-764(G). Similarly, Paragraph 6(d) of the Trust Agreement provides that the trustee may "vote . . . with respect to any share of stock or other securities held by them . . . and to take any steps that they may deem necessary or proper to enable the trust to obtain the benefit of such transaction." This follows Paragraph 6's grant of authority to the trustee to undertake such actions as a fiduciary unless they will "be used to enlarge or shift any beneficial interest created hereunder."

Plaintiff has alleged that, in voting to declare a dividend from the Seth Corporation, Kirk did not act in the best interest of the Milton Perel Trust, as it diminished the value of an asset of the trust. Kirk voted to declare the dividend not to benefit the trust and did not take steps to enable the trust to obtain the benefit of the transaction. Further, Plaintiff alleges that Kirk voted to declare the dividend to shift the beneficial interest to Retta Leigh and Kirk and away from Doug. As the litigation progresses, Plaintiff will still need to prove that the dividend diminished the value of the Milton Perel Trust. However, at this stage, Plaintiff's allegations that Kirk voted the shares of the Seth Corporation inconsistent with the interest of the Milton Perel Trust and Doug as a beneficiary, and the alleged facts in support, suffice for Plaintiff's breach of trust and fiduciary duty claim in Count II to survive Defendants' Motion to Dismiss.

## D.     Plaintiff Has Sufficiently Pled a Claim Against Retta Leigh in Count III.

In Count III, Plaintiff alleges that Defendant Retta Leigh bears liability for Kirk's breach

to the Milton Perel Trust, either as an aider and abettor or as a joint tortfeasor.  Defendants move

to dismiss Count III, arguing that Virginia law does not recognize a tort for aiding and abetting a

breach of fiduciary duty.  (Defs.' Mem. at 20.)  Plaintiff avers that Virginia has long recognized

liability for aiding and abetting a breach of fiduciary duty.  As described below, the Court finds

that, although Virginia does not recognize a separate tort of "aiding and abetting," Virginia law

provides a viable alternative theory to secure joint liability.

### i.     Virginia Does Not Recognize a Separate Tort for Aiding and Abetting a Breach, but It Does Recognize Joint Tortfeasor Liability.

Neither the common law nor any statutes establish a separate cause of action for aiding

and abetting a breach of fiduciary duty.  *Calderon v. Aurora Loan Serv., Inc.* 2010 WL 2306343,

at *6 (E.D. Va. June 3, 2010).  However, some courts applying Virginia law have recognized

such a cause of action, while others have rejected it.  "If state law is unclear or unsettled, a

federal court must determine the rule that the state supreme court would probably follow, not

fashion a rule which an independent federal court might consider best."  *Meadow Ltd. P'ship v.

Heritage Sav. & Loan Ass'n*, 639 F. Supp. 643, 653 (E.D. Va. 1986).  Thus, the Court will

endeavor to determine what rule the Supreme Court of Virginia would follow.

The confusion surrounding whether Virginia recognizes a cause of action for aiding and

abetting a breach of fiduciary duty appears to stem from the Supreme Court of Virginia's

decision in *Patteson v. Horsely*, 70 Va. 263 (Va. 1877).  *Patteson* stands for the proposition that

one who knows of a breach of trust and participates in it for his own benefit can bear liability as

a joint tortfeasor.  *Id.* at 270-71 (stating that a breach in which the defendant participated,

"having notice, actual or constructive, of the facts which constituted such breach of trust, and the

26

same having been committed at his instance and for his benefit; and that the said trustee and the said Hancock are therefore liable to the beneficiaries in the said trust for all damages sustained by them in consequence of the said breach of trust").

Since *Patteson*, the Supreme Court of Virginia has neither expressly recognized nor expressly rejected aiding and abetting a breach of fiduciary action as a separate cause of action. Instead, it has assumed the existence of the cause of action to evaluate whether a plaintiff had properly pled a claim. *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 411-12 (Va. 2004); *Uplinger v. Alexandria Overlook Condo. Council of Co-Owners*, 2018 WL 3062247, at *4 (Va. 2018). In *Halifax*, the court evaluated a claim against Wachovia Bank for aiding and abetting the comptroller for Halifax in her breach of fiduciary duty by depositing checks used to embezzle funds from Halifax accounts. *Halifax*, 604 S.E.2d at 412. The court assumed *arguendo* that the cause of action existed and dismissed the claim against Wachovia Bank for failing to adequately allege facts to support the two elements of the claim. *Id.* at 411-12. In analyzing the claim, the court stated that the plaintiff needed to allege facts supporting the defendant's (1) knowledge of the breach of fiduciary duty, and (2) participation in that breach. *Id.* at 412.

Similarly, in *Uplinger*, the court again took the approach, stating that "[a]ssuming without deciding that we would recognize such a cause of action in Virginia, just as we assumed without deciding the same in [*Halifax*], Uplinger's claim here fails," because she had not stated a valid claim for an underlying breach. *Uplinger*, 2018 WL 3062247, at *4 (citations omitted). Given this confusion, some courts have found that a cause of action exists, some have found that it does not, other courts have assumed a cause of action like in *Halifax* and still other courts have found that it presents an alternative theory of liability.

The cases that do find a cause of action under Virginia law rely on *Patteson*. For example, in an unpublished decision, the Fourth Circuit utilized the holdings in *Patteson* to find that "one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance." *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 45 F.3d 428, 1994 WL 717598 (4th Cir. 1994) (Table). In *Tysons Toyota*, the court found that the district court erred by dismissing the claim when Tysons alleged their president breached his fiduciary duty by usurping a corporate opportunity, and the insurance companies knew there was a conflict of interest, followed the president's instructions to reinsure Tysons' policies and benefitted financially from the scheme. *Id.* at *4.

Other lower courts have likewise found that aiding and abetting a breach of a fiduciary duty constitutes a stand-alone cause of action. *See AvalonBay Cmtys., Inc. v. Willden*, 2009 WL 2431571 at *11 (E.D. Va. Aug. 7, 2009) (holding a defendant liable for aiding and abetting his brother's breach of fiduciary duty when he processed fraudulent invoices that harmed his brother's employer, AvalonBay); *St. Paul Fire and Marine Ins. Co. v. Hoskins*, 2012 WL 748574 at *5, *11 (W.D. Va. Mar. 7, 2012) (relying on *AvalonBay* to find a cause of action and a genuine issue of material fact concerning knowledge of the breach); *In re James River Coal Co.*, 360 B.R. 139, 174 (Bankr. E.D. Va. 2007) ("[a]iding and abetting breach of fiduciary duty is a viable claim under Virginia law."); *In re Health Diagnostic Lab'y, Inc.*, 2018 WL 4676339 at *11 (Bankr. E.D. Va. 2018) (relying on the Fourth Circuit decision in *Tysons* and Virginia Circuit Court opinions to find a cause of action and denying the motion to dismiss). However, apart from *Health Diagnostic Laboratory*, these cases did not have the benefit of the Supreme Court of Virginia's ruling in *Uplinger*, which declined to recognize the cause of action for the second time.

Other courts have held that Virginia law does not recognize aiding and abetting a breach of fiduciary duty as a valid cause of action. *See, e.g., Calderon*, 2010 WL 2306343, at *6 (finding no basis for an aiding and abetting claim in any statute or common law); *Infinity Tech, LLC v. Burney*, 2020 WL 6387378 at *6 (E.D. Va. June 4, 2020) ("[b]ecause neither the Supreme Court of Virginia nor the Virginia General Assembly has adopted an independent cause of action for aiding and abetting a tort . . . plaintiff's claim . . . must be dismissed."); *MicroStrategy Servs. Corp. v. OpenRisk, LLC*, 2015 WL 1221263 at *3 (E.D. Va. Mar. 17, 2015) (dismissing a claim for aiding and abetting breach of fiduciary duty, because the *Calderon* court "declined to create a such cause of action"); *Bastable v. Muslu*, 2009 WL 7339887, at *3 (Va. Cir. 2009) (stating that "there is no modern authority which supports a claim for aiding and abetting a tortious action"). These cases rely on the lack of a cause of action in the common law or statutes and the fact that the Supreme Court of Virginia has expressly declined to recognize the cause of action.

Still, other courts have declined to find that *Patteson* created a separate tort, but instead recognized a theory of joint liability. *See, e.g., Alliance. Tech. Grp., LLC v. Achieve 1, LLC*, 2013 WL 143500, at *5 (E.D. Va. Jan. 11, 2013) (explaining that *Patteson* created what "appears to be a viable alternative theory to secure joint liability" and not a clear recognition of a separate aiding and abetting tort); *TechINT Sols. Grp., LLC v. Sasnett*, 2019 WL 2619539, at *5 (W.D. Va. June 26, 2019) (treating the aiding and abetting claim as a theory to secure joint liability). In *Alliance Tech*, the Court noted that "*Patteson* stands for the proposition that one who knows of a breach of trust and participated in it for his own benefit is liable as a joint tortfeasor." 2013 WL 143500, at *5. The Court stated that the label of the claim "is of little consequence" and instead focused on the substance of the claim recognized in *Patteson*. Therefore, to succeed on this

"viable alternative to secure joint liability," a plaintiff would need to prove that a defendant "(1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." *Id.* (citing *Patteson*, 70 Va. at 270-71). The Court took a similar approach in *Quinn v. Knight*, citing the "alternative theory to secure joint liability" language from *Alliance Tech* and analyzing the plaintiff's claim under the same elements. 2016 WL 6471462, at *5 (E.D. Va. Nov. 1, 2016).

The Court finds the reasoning of *Alliance Tech* convincing. As other courts have noted, neither the common law nor any Virginia statute establishes a separate tort for aiding and abetting a breach of fiduciary duty. And, the Supreme Court of Virginia has expressly declined to recognize the tort despite having the opportunity to do so. Accordingly, this Court will not assess Plaintiff's claims as if the cause of action exists. However, *Patteson* teaches, as the Court stated in *Alliance Tech*, that Virginia allows for joint tortfeasor liability when a party knows of a breach of trust and participates in it for his own benefit. *Patteson*, 70 Va. at 270-71. Thus, the Court will examine whether Plaintiff has sufficiently pled joint tortfeasor liability as required in *Patteson.*[6]

### ii. Plaintiff Has Pled Sufficient Facts in Count III.

To hold a defendant jointly liable for breach of fiduciary duty, a plaintiff must show that a defendant: "(1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." *Alliance Tech.*, 2013 WL 143500, at *5. The Court will examine Plaintiff's allegations of each element in turn.

---

[6]    Indeed, Plaintiff pleads Count III as a claim for aiding and abetting breach of trust and fiduciary duty or, alternatively, for joint tortfeasor liability.

### a.    Knowledge of Fiduciary Duty and Breach of That Duty

Knowledge of a breach of fiduciary duty must be actual knowledge.  *Halifax*, 604 S.E.2d

at 660; *Herold v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2018 WL 1950641, at *4 (E.D.

Va. Apr. 25, 2018); *Best Medical Int'l, Inc. v. Wittmer*, 2007 WL 6013714, at *2 (Va. Cir. Aug.

8, 2007); *see also Studco Bldg. Sys. U.S., LLC v. 1ˢᵗ Advantage Fed. Credit Union*, 2020 WL

7482840, at *7 (E.D. Va. Dec. 18, 2020) (complaint dismissed with prejudice when it alleged

that a bank failed to notice a fraud scheme but did not allege actual knowledge of fiduciary duty

or breach).  In *Halifax*, Halifax Corporation alleged that Wachovia knew Adams, the Halifax

comptroller, owed a fiduciary duty but did not specifically allege Wachovia knew that she

breached that duty by embezzling funds from company accounts.  604 S.E.2d at 412.  The court

held that the plaintiff had not met the first element of the claim without proof that Wachovia had

actual knowledge of the breach.  *Id*.  The court accordingly affirmed the trial court's grant of

summary judgment in favor of Wachovia.  *Id*. at 404, 414.

However, allegations of knowledge need only state that a defendant had actual

knowledge of the duty and breach.  *Quinn*, 2016 WL 6471462, at *4; *All. Tech. Grp.*, 2013 WL

143500, at *5.  In *Quinn*, the Court found that Plaintiff had adequately alleged the claim when

"defendants knew of Glade Knight's financial interests in the merger," which constituted a

breach of Knight's fiduciary duties.  2016 WL 6471462, at *4.  The Court, therefore, denied the

motion to dismiss.  *Id*. at *5.  In *Alliance Technology Group*, the Court found it sufficient that the

former employee knew that his new employer and his co-workers had breached their fiduciary

duty by using confidential information.  2013 WL 143500, at *5.  Since the employee allegedly

had the requisite knowledge, the court denied the motion to dismiss.  *Id*.

Here, Plaintiff has alleged sufficient facts that Retta Leigh had knowledge of Kirk's fiduciary duty and his breach of that duty. Specifically, Plaintiff alleges that "Retta Leigh was fully aware of the fiduciary duties Kirk owed to Doug as the Trustee of Milton Perel Trust." (Compl. ¶¶ 68, 116.) Additionally, Plaintiff alleges that Kirk carried out Retta Leigh's wishes in breaching his fiduciary duty. (Compl. ¶ 69.) Moreover, Plaintiff alleges that Retta Leigh directed and participated in the breaches, as "her vote was required to implement the scheme of taking out unnecessary debt to funnel massive distributions to herself" (Compl. ¶ 117), giving rise to the inference that Retta Leigh had knowledge of the breach. These allegations resemble those in *Quinn* and *Alliance Technology*, where the Court denied motions to dismiss based on the plaintiffs' allegations of actual knowledge. Accordingly, Plaintiff's allegations satisfy the knowledge element of his cause of action in Count III.

### b.   Participation in Breach of Fiduciary Duty

A third party participates in a breach of fiduciary duty when they affirmatively act to aid the breach. *Halifax*, 604 S.E.2d at 414; *Jordan v. Osmun*, 2016 WL 7173784, at *6 (E.D. Va. Dec. 8, 2016). In *Halifax*, the court found that the corporation did not allege that Wachovia participated in the comptroller's breach of her duty, because the complaint did not state that "recruited, enticed, [or] encouraged" the comptroller. 604 S.E.2d at 414. While the bank participated in the transactions by depositing the checks in question, the plaintiff made no assertion that Wachovia affirmatively acted with *mens rea* to intentionally participate in the breach; instead, the bank participated in the transaction as it would when any check arrived. *Id.*

In *Jordan*, a widow sued the executor of her husband's will for breaching her fiduciary duty by making fraudulent expenditures. 2016 WL 7173784, at *1. The court found that the executor's husband's failure to report alleged misappropriations and his removal of property

32

from the estate before the alleged fraudulent conduct did not constitute the affirmative conduct required to show participation in the alleged breach. *Id.* at *6. Conversely, in *Quinn*, the Court found that allegations that the defendant engaged in sham negotiations regarding the purchase at issue sufficed to satisfy the participation prong. 2016 WL 6471462, at *4. Likewise, in *Alliance Technology*, the allegations that the defendant accepted employment with the breaching company despite knowledge of the breach satisfied the participation prong. 2013 WL 143500, at *5.

Here, Plaintiff sufficiently alleges that Retta Leigh participated in the breach of fiduciary duty. She voted to declare the dividends that ultimately flowed to her. (Compl. ¶ 117.) Without her vote, the scheme — and the breach — could not have occurred. (Compl. ¶ 117.) Moreover, Plaintiff alleges that Kirk implemented the scheme to carry out Retta Leigh's wishes. (Compl. ¶ 67.) Her actions went beyond the actions in *Halifax,* where the bank only deposited fraudulent checks. 604 S.E.2d at 414. Unlike the husband's actions in *Jordan*, Retta Leigh allegedly affirmatively cast her vote and directed the transactions. 2016 WL 7173784, at *1; (Compl. ¶ 117). At this stage in the litigation, these allegations satisfy the participation prong.

### c.    Benefit from the Breach of Fiduciary Duty

Alleged benefit from a breach of fiduciary duty need only state what benefit an aider or abettor received from participation in the scheme. *All. Tech. Grp.*, 2013 WL 143500, at *5; *Halifax*, 604 S.E.2d at 413. In *Alliance Technology Group*, the Court denied the motion to dismiss, in part because the plaintiff adequately pled that the employee accepted employment with its competitor, "thereby receiving benefits derived from their breach of fiduciary duty." 2013 WL 143500, at *5. In *Halifax*, the court found that the corporation failed to allege that the embezzlement scheme was done for Wachovia's benefit due to its lack of participation in the scheme. 604 S.E.2d at 413.

33

Here, Plaintiff sufficiently alleges that Retta Leigh benefitted from the breach, because Plaintiff claims that Retta Leigh received "massive distributions" "in excess of $2,500,000." (Compl. ¶¶ 58, 61, 117.)  Large dividends, especially "unusually large" dividends, substantially benefited Retta Leigh. (Compl. ¶ 59.)  Like the employee in *Alliance Technology Group*, Retta Leigh received benefits from her involvement in the scheme in the form of large distributions. Unlike in *Halifax* where the bank did not directly benefit from the scheme, this scheme inured to the benefit of Retta Leigh, at least in part, because only Retta Leigh received the distributions from the estate.  The many allegations about large payments to Retta Leigh more than suffice to show that her alleged involvement benefitted her. (Compl. ¶ 55.)

Accordingly, Plaintiff has satisfied all three elements required to plead joint tortfeasor liability for a breach of fiduciary duty.  Therefore, Defendants' Motion with respect to Count III will be denied.

### E.       Plaintiff Has Sufficiently Pled a Claim for Civil Conspiracy in Count IV.

In Count IV, Plaintiff alleges a claim for common law conspiracy, claiming that Kirk and Retta Leigh conspired to breach the fiduciary duty that Kirk owed the Milton Perel Trust and Doug.  Defendant moves to dismiss Count IV on the grounds that Plaintiff has not established the underlying breach or alleged the particulars of conspiracy. (Defs.' Mem. at 22-24.)  Plaintiff responds that he has alleged specific details regarding the conspiracy. (Pl.'s Mem. at 17-18.) The Court agrees with Plaintiff.

The Supreme Court of Virginia has defined a civil conspiracy as "(1) a combination of two or more persons, (2) by some concerted action, (3) to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Generam Motors Corp.*, 37 S.E.2d 744, 746 (Va.

34

1985).  The "unlawful act" element requires that at least one member of the conspiracy commit an "underlying tort." *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007).  Courts often must infer a conspiracy from indirect evidence to determine that the joint tortfeasors acted in concert in pursuit of the same goal.  *Tysons Toyota*, 1994 WL 717598, at *5.  A plaintiff need not prove an express agreement, because "proof of a tacit understanding suffices."  *Id.*

Here, as described above, the Court has already found that Plaintiff sufficiently alleged the underlying tort of breach of fiduciary duty, thereby satisfying the "unlawful act" element. With respect to the other two elements, Plaintiff alleges the four specific dates that Kirk and Retta Leigh acted in concert to declare unusually high dividends from the Seth Corporation. (Compl. ¶ 55.)  Plaintiff alleges that Kirk and Retta Leigh substantially increased the debt owed by Fairfield Development "for the primary purpose of paying out large dividends inuring the benefit of Retta Leigh and Kirk." (Compl. ¶ 62.)  Despite the dividends having no legitimate business purpose, Defendants declared the dividends "as a means to funnel funds to Kirk and Retta Leigh to cover the cost of the Settlement Payment." (Compl. ¶ 64.)  These actions allegedly damaged the Milton Perel Trust by diminishing the value of a significant asset of the Trust. (Compl. ¶ 107.)  Therefore, Plaintiff has sufficiently pled facts to support his claim for common law conspiracy, and Defendants' Motion with respect to Count IV will be denied.

    **F.**    **Plaintiff Has Sufficiently Pled a Claim for Corporate Inspection in Count V.**

In Count V, Plaintiff moves the Court for an order enforcing his right as a shareholder to inspect the corporate records of the Seth Corporation.  Defendants move to dismiss this claim on the grounds that Plaintiff has had an opportunity to access the records, provided that he agree to a protective order to maintain the confidentiality of the documents. (Defs.' Mem. at 24.)  The

Court agrees with Plaintiff that he has the right to access some records without first agreeing to a confidentiality order, but he does not have a right to access all of the information that he seeks.

Virginia statutes provide for a scheme that governs a shareholder's right to compel production of corporate records. Thus, the existence or nonexistence of Plaintiff's rights to inspect the Seth Corporation's corporate records "is a question of statutory interpretation." *Pagliara v. Fed. Home Loan Mortg. Corp.*, 203 F. Supp. 3d 678, 687 (E.D. Va. 2016). Therefore, the Court will begin with the relevant statutory language. *Id.* First, according to section 13.1-771, "a shareholder is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in subsection E of § 13.1-770 if the shareholder delivers a signed written notice to the corporation's secretary . . ." Va. Code Ann. § 13.1-771(A). Subsection E of § 13.1-770, in turn, lists the following documents that a corporation must maintain and make available for inspection:

1. A copy of its articles of incorporation as currently in effect, and any notices to shareholders referred to in subdivision L5 of § 13.1-604 specifying facts on which a filed document is dependent if those facts are not included in the articles of incorporation or otherwise available as specified in subdivision L5 of § 13.1-604;

2. Its bylaws as currently in effect;

3. Resolutions adopted by its board of directors creating one or more classes of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;

4. The minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years;

5. All written communications within the past three years to shareholders generally, including the financial statements furnished for the past three years under § 13.1-774;

6. A list of the names and business addresses of its current directors and officers; and

7. A copy of its most recent annual report filed with the Commission under § 13.1-775.

Va. Code Ann. § 13.1-770(E).  Nothing in the interplay between these two provisions suggests that corporations may impose restrictions on the confidentiality of these records when a shareholder seeks access.  Accordingly, Defendants' request that Plaintiff agree to a protective order before allowing him to inspect the records listed above fails.

However, another provision allows for the corporation to impose restrictions on the confidentiality of other records that it allows a shareholder to inspect.  Specifically, "[t]he corporation may enforce reasonable restrictions on the confidentiality, use, or distribution of records described in subsection C."  Va. Code Ann. § 13.1-771(E).  Subsection C, in turn, requires a corporation to make available to shareholders the following documents:

1.  Excerpts from minutes of any meeting of, or records of any actions taken without a meeting by, the board of directors or a committee of the board of directors while acting in place of the board of directors on behalf of the corporation;

2.  Accounting ledgers and related work papers used in the preparation of the corporation's most recent annual financial statements; and

3.  The record of shareholders of record maintained in accordance with subsection C of § 13.1-770.

Va. Code Ann. § 13.1-771(C).  Likewise, with respect to financial statements, "the corporation may require the requesting shareholder to agree to reasonable restrictions on the confidentiality, use, and distribution of such financial statements."  Va. Code Ann. § 13.1-774.  Accordingly, here, Defendants may request that Plaintiff agree to a reasonable protective order with respect to these documents.

Although Plaintiff has a right to many of the documents demanded in the Complaint, his demands go beyond the documents to which the statute entitles him.  For example, Plaintiff requests the financial statements and tax returns for Fairfield, as well as the minutes or resolutions related to the loan refinances at issue.  (Compl. at 21; ECF Nos. 1-4, 1-7.)  However, Plaintiff does not serve as a shareholder of Fairfield.  Indeed, Fairfield operates as a limited

37

liability company, and the Virginia Code contains an entirely distinct mechanism for members of a limited liability company to obtain records. *See* Va. Code Ann. § 13.2-1028 (providing for the records that a limited liability company must maintain and the records and inspection rights of each member). Plaintiff does not allege that he requests inspection of Fairfield's documents as a member of Fairfield, but rather as a shareholder of the Seth Corporation. Yet, he points to nothing in the code that would entitle the shareholder of one corporation to inspect the records of a limited liability company. Accordingly, the Court finds that Plaintiff has no right to inspect Fairfield's records.

Likewise, Plaintiff requests the financial statements, accounting records and tax returns for the Seth Corporation. As noted above, the Virginia Code allows Defendants to require Plaintiff to agree to reasonable confidentiality restrictions before turning over the requested financial statements and accounting records. Va. Code Ann. § 13.1-774. With respect to tax returns, the statute does not obligate a corporation to make tax returns available for inspection by a shareholder. Under the canon of interpretation *expression unius est exclusion alterius*, "expressing one item of an associated group or series excludes another left unmentioned." *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017). The General Assembly clearly knows how to include tax returns in a list of documents subject to inspection, as tax returns are included in the list of documents subject to inspection for limited liability corporations and limited partnerships. Va. Code Ann. § 13.1-1028(A)(3) (limited liability corporation); Va. Code Ann. § 50-73.8(A)(3) (limited partnership). Therefore, because the General Assembly did not include tax returns in the list of a corporation's documents subject to shareholder inspection, then shareholders do not have a right to inspect tax returns under § 13.1-770. Accordingly, the Court finds that Plaintiff has no right to inspect the Seth Corporation's tax returns and has no

38

unconditional right to inspect the Seth Corporation's financial statements and accounting records without agreeing to reasonable confidentiality restrictions.

In sum, the Court denies Defendants' Motion with respect to the documents requested under § 13.1-770(E) and grants Defendants' Motion with respect to Fairfield's documents and the documents for which the Virginia Code allows the Seth Corporation to enforce reasonable restrictions on the confidentiality and use of the documents. The Court encourages the parties to work toward a mutually agreeable protective order to facilitate the free flow of information to which shareholders are entitled.

### G.      Plaintiff Has Pled a Claim for Disclosure in Count VI.

In Count VI, Plaintiff asks the Court to compel Kirk to disclose information related to the Milton Perel Trust. Defendants moved to dismiss Count VI on the grounds that Kirk no longer serves as the trustee of the Milton Perel Trust and, therefore, cannot be liable for disclosing the requested information. Defendants also claim that Plaintiff seeks information well beyond the scope of what the statute requires. The Court finds that Defendant remains liable for providing information related to the administration of the Trust during his time as Trustee, but, again, not to the extent that Plaintiff requests.

According to the Virginia Code:

> [a] trustee shall keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. Unless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust. A trustee who fails to furnish information to a beneficiary or respond to a request for information regarding the administration of the trust in a good faith belief that to do so would be unreasonable under the circumstances or contrary to the purposes of the settlor shall not be subject to removal or other sanctions therefor.

Va. Code Ann. § 64.2-775(A).  This requirement applies to all trustees, as the definition of "trustee" includes "an original, additional, and successor trustee and a cotrustee."  Va. Code Ann. § 64.2-701.  The definition of trustee contains no implicit expiration.  Indeed, the statute makes clear that a trustee's resignation does not discharge liability for acts or omissions committed while serving as the trustee, as "[a]ny liability of a resigning trustee or of any sureties on the trustee's bond for acts or omissions of the trustee is not discharged or affected by the trustee's resignation."  Va. Code Ann. § 64.2-758; *see Goodenow v. Kunkle*, 2009 WL 10689321, at *5 (E.D. Va. May 19, 2009) ("Thus, the statute clearly provides for actions against former trustees for actions committed prior to their resignation.").  Therefore, Defendants' argument that Kirk can no longer provide the information fails.

However, Defendants correctly argue that Plaintiff seeks documents beyond the scope of what the statute requires.  The statute requires that the trustee keep beneficiaries "reasonably informed about the administration of the trust and of the material facts necessary from them to protect their interests," and that the trustee promptly respond to a beneficiary's request for information "related to the administration of the trust."  Va. Code Ann. § 64.2-775.  Here, Plaintiff seeks, as part of his request to the Milton Perel Trust, the financial statements and tax returns of the Seth Corporation and Fairfield, along with minutes and resolutions from both.  These requests regarding the management of other entities go beyond the scope of documents related to the administration of the Milton Perel Trust.  Indeed, these requests go beyond seeking a report of the Trust's assets and liabilities and details regarding all trust activity, including the compensation of the trustee.  *See* Va. Code Ann. § 64.2-775(C) (describing contents of report that trustee must send to beneficiaries).  Plaintiff may obtain that type of information — related to the administration of the Trust — for the years following 2016, but not the detailed

information regarding the activities of the other entities.  Accordingly, Defendants' Motion will be granted with respect to Count VI to the extent that Plaintiff seeks documents related to the management of the Seth Corporation and Fairfield, but denied to the extent that Plaintiff seeks documents related to the administration of the Milton Perel Trust.

## IV.   CONCLUSION

For the reasons stated above, the Court will DENY IN PART and GRANT IN PART Defendants' Motion to Dismiss (ECF No. 9).  Defendants' Motion will be granted as to Count II, but only with respect to Plaintiff's claim for a breach from the failure to convert the distribution from income to principal.  Defendants' Motion will also be granted as to Counts V and VI with respect to the documents described herein, but denied with respect to the other documents requested.  Defendants' Motion will be denied in all other respects.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: November 2, 2021